Edward Herndon *v.* James Henderson.

That this instruction ought to have been given is settled by the case of *Stringfellow* v. *The State*, 26 Miss. 157; *Brown* v. *The State*, 32 Miss. 433, and *Same* v. *The State*, 33 Miss. 347.

No judgment could properly be given on the verdict in this case. The accused was convicted generally on both counts of the indictment; but the jury having found the value of the property to be $100, it follows that the conviction on the first count was for a misdemeanor (Act November 24, 1865, p. 75, § 20), and on the second count for a felony, the value of the property in cases against receivers of stolen property not being material. It was impossible, therefore, for the court to know what judgment to render.

The judgment will, therefore, be recovered, and the cause remanded for a new trial.

---

## APRIL SPECIAL TERM, 1868.

### Edward Herndon *v.* James Henderson.

1. EVIDENCE: WHEN CONTRACT REDUCED TO WRITING IT BECOMES SOLE EXPONENT OF CONTRACT.—When a contract is reduced to writing, all oral altercations, propositions, offers, and conversations between the parties prior to its execution are inadmissible as evidence, and are merged into the writing, and that becomes the only exponent of what the contract was.

2. CONSIDERATION: VOLUNTARY PROMISE NOT TO DEMAND PAYMENT OF DEBT, VOID.—A mere voluntary promise by a creditor not to sue or to demand payment of his debt on the happening of a contingency, does not impair the legal right of the creditor to collect the demand.

3. ILLEGAL CONTRACTS: MADE ON SUNDAY VOID: EVIDENCE NOT ADMISSIBLE UNDER GENERAL ISSUE.—A contract made and executed on Sunday is illegal and void. Evidence that the contract was made on Sunday is not admissible under a plea of the general issue. The fact must be specially pleaded, or notice must be given with the plea of the general issue.

4. INSTRUCTIONS TO JURY: CONFLICTING.—It is erroneous to give to the jury instructions which involve conflicting legal principles: it leaves the jury without any rule by which to be governed.

ERROR to the Circuit Court of Hinds county. Hon. John Watts, judge.

The facts of the case are fully stated in the opinion of the court.

*Johnston & Johnston* for plaintiff in error.

The contract between the parties was a written one. The promissory note sued on, and the bill of sale of the slave for which the note was given, both being in writing, constitute the whole contract. When a contract is reduced to writing, all oral altercations, propositions, offers, and conversations between the parties, entered into prior to the execution of the written contract, are merged by the writing, and that instrument becomes the only exponent of what the contract really was. This proposition is too familiar and too well established to require the elaborate citation of authorities. The court, however, is referred to the following authorities on this point: 2 Parsons on Con., from page 547 to 552; 1 Greenleaf Ev., page 315, §§ 275, 276, 277. Ib., page 319, § 281. *Haverin* v. *O'Donnell,* 7 S. & M. 244. Three witnesses for defendant were permitted by the court below (and in disregard of objections urged by plaintiff's counsel) to testify as to various terms, propositions, assurances, arguments, and opinions of the contracting parties, made before the contract was reduced to writing. This was clearly erroneous, and, of itself, should lead to a reversal of the judgment. Such matter, improperly admitted to the jury, was well calculated to mislead the jury, and no doubt did prejudice plaintiff's cause improperly.

It is true that, on admitting such illegal evidence, the court said that it would be ruled out at the close of the evidence, if it should then be deemed improperly admitted; but it was error to permit the evidence to go to the jury at any stage of the cause, and thus improperly impress their minds. *Part* of the illegal evidence thus admitted *was* ruled out by the instructions; but the mischief had already been effected, by impressing the jury with a mass of improper evidence. It will not do to let illegal evidence go to a jury, and work conviction on their minds, and then endeavor to remedy the error by telling the jury not to consider that which they *have* considered, and directing them not to believe that which has generated belief already.

2. The second assignment of error is well made. The instruction asked for by plaintiff and refused (No. 13) is as follows :—" There being no special plea that the contract in this case was on Sunday, and no notice given of that matter under the plea of general issue, the evidence relating to that matter should not be considered by the jury." This instruction ought to have been given, and if given, the verdict would surely have been for the plaintiff, instead of the defendant. There is not in the record any special plea that this was a *Sunday* contract. The notice, given under the general issue, pursuant to the statute, says not a word about evidence to show that the contract was made on Sunday. It was error to permit witnesses to say that the trade was made on the Sabbath. The statute, regulating notices under the general issue, provides that no matter *shall be allowed to be* given in evidence which is not contained in the notice annexed to the plea, where the matter offered to be proven is affirmative, and in avoidance of the action. Rev. Code 1857, 493, art. 97. The court below ought not to have allowed evidence that the trade was made on Sunday to go to the jury, nor ought that court to have refused our 13th instruction, telling the jury to disregard that evidence, under the pleadings and notice in the cause. To *spring* such vital evidence on plaintiff without plea or notice, was taking him by surprise, and giving no chance, whatever, to produce rebutting evidence. Surely this error must, of itself, reverse the judgment.

3. The refusal of the court below to give plaintiff's 15th instruction is assigned as error, under the 4th assignment. The principle asserted in that instruction is, that the *date* of a note, assented to and recognized by the maker thereof, cannot be controverted by oral testimony, unless it be shown that there was fraud in establishing such date. This is certainly true, as a legal proposition. The instruction was applicable to the facts in the case. Cook, the witness, who drew the note, and dated it on Saturday, the 28th, although he says the contract was made on Sunday, says, also, that the note was in fact dated on *the day* the contract *was made*, and that the note and bill of sale were not dated *backward* or *forward*. The instruction last

named ought, therefore, to have been given. Its refusal was error.

4. The first instruction for defendant was erroneously given. That instruction is true, as an abstract question of law ; but, in this case, there was no evidence of any fraud in the procurement of the note sued on ; and as there were no facts to which the principle contained in that instruction could be applied, it was error to give it. *Newman* v. *Foster*, 3 How. 383.

5. The second instruction given for defendant is of the same character. It is a charge on a mere abstract principle. Indeed, it *assumes* that there is fraud in the transaction when none is proven. It is clearly erroneous.

6. We contend that the court erred in giving the fifth instruction for defendant. . True it is that a Sunday contract is void ; but, under the state of pleadings in this case, already adverted to, it was erroneous to give this instruction, there being no plea or notice setting up that the contract was made on Sunday.

7. Lastly, the court erred in overruling the motion for a new trial. Certainly the verdict was contrary to the evidence. Apart from the *Sunday* question, the case was clearly made out for plaintiff. There can be no doubt of that. As to the proof that the trade was made on Sunday, we remark, that all that evidence ought to have been excluded, under the pleadings, and, also, that the proof that it was on Sunday is by no means satisfactory. Cook, the principal witness of defendant, says the contract was on Sunday ; but he also says that the note and bill of sale were dated on the day when the contract *was made*. Referring to those documents, we find that they are both dated on Saturday, the 28th. Herndon, the plaintiff below, says his recollection is that the trade was *made* on *Saturday*. Cook is only enabled to recollect (if, indeed, he has any remembrance of the matter) that it was Sunday, because it was a leisure day, and several of the overseers of the neighborhood were hovering about the camp where plaintiff had his negroes for sale. We are not inclined to argue cases of *hardship* to the court here ; but we will remark that this is a hard and unjust case. De-

fendant got a slave worth $1000 in gold, as he admits, for *nothing*. He has practised immorality in the defence he made. We rely, however, for a reversal of this case, on the legal grounds presented by the record.

*D. Shelton* for defendant in error.

Upon the objections and exceptions taken, as shown by the record, it was impracticable for the court below to have acted more definitely than it did on behalf of plaintiff. Plaintiff's counsel pursued precisely the same course in reference to each of the three witnesses. The testimony of each of the witnesses embraced a variety of matters, misrepresentations by plaintiff of the qualities of the slave, the kind of currency existing at the time of the trade, the kind of money in which payment was contemplated, defendant's unwillingness to buy the slave on account of the dangerous condition of the country, his fear that the Confederacy would fall and he would lose the negro. Plaintiff's assurances that if it did "Uncle *Johnny*," meaning defendant (whose name he did not even know, for it was *James*), *should not* pay a dollar for her, and that defendant *should not* lose a cent by the trade; that he never would trouble defendant about the note, and if he could not pay it when due plaintiff would wait for the money.

After all this is written down, the bill of exception recites: "To the introduction of all the evidence as to conversations between the parties, prior to the execution of the note, going to show *any verbal condition* to the contract, or *any verbal warranty* by plaintiff, and to all evidence as to the arguments and persuasions of plaintiff, objected at the time such evidence was offered. The court admitted the evidence for the time, stating that if at the close of the evidence it appeared to be improperly admitted, it would be ruled out." To that, plaintiff excepted. Precisely similar exceptions were taken as to the evidence of the other two witnesses, and after the evidence was concluded, the court did "rule out the evidence as to plaintiff's promises about not collecting the note if the Confederacy failed;" and the court further instructed the jury that the

writings were the only exponents of the contract, and excluded all oral evidence as to its terms. That the jury cannot regard the conversations as any part of the contract, and the defendant, in asking his instructions, expressly admitted the doctrine.

.But, at the request of defendant, the court also instructed the jury that *fraud* vitiates a contract, and if Herndon induced Henderson to make the purchase by false and fraudulent representations, plaintiff could not recover, and that to prove such fraud the representations and assurances of Herndon were proper evidence if they conduced to prove fraud, though not competent to change the terms of the contract.

It was a general objection to all evidence *going to show a parol condition, a parol warranty,* or *plaintiff's arguments and persuasions.*

Now, if the facts shown in evidence had had no other significance but that which the opposite counsel pleased to point to, the objection would have been valid. But the instructions show what significance defendant's counsel attached to them; they relied on the evidence as proof of fraud on the part of Herndon. Whatever the court might have thought as to the sufficiency of the proof when the evidence closed, we were entitled to the benefit of it when the objection was made. But when the proper time came the court did more for the plaintiff than it ought to have done—it not only ruled the law correctly in the instructions, but it excluded a portion of the facts material on the issue of fraud from consideration by the jury. These positions can be avoided only by showing that the evidence did not *tend* to prove Herndon's fraud. Let us see whether it had any such tendency. The government was in the vortex of a revolution that was threatening to destroy slave property; both parties knew that as to this negro one party or the other had to bear the hazard of future destiny. It was upon Herndon, who wished to shift it on to Henderson, who was unwilling to accept it. Herndon assures him that he wishes to sell to him because he owns relations; that she has numerous good qualities, some of which she really did not possess;

assures his Uncle Johnny (as he calls Henderson, whose real name is *James*) that the Confederacy will not " go up," and *pledges his word* that if it does, and he loses the negro, he *shall* never pay a dollar for her ; that he *shall* never lose a dollar by the trade ; that, in any event, he will never press him for it, and if he cannot pay it he will give him time until he can.

Now, if Herndon was honestly in earnest in all these things there was no fraud, but if the jury should believe that all the time Herndon was gammoning " Uncle Johny " for the real purpose of getting a safe footing for himself; if they should believe that his assurances of philanthropy to the negro, of the good qualities she possessed, of the permanency of slavery, his *pledges* that Henderson *should* (if he lost her) *never* pay a dollar for her, that he *should never* lose a dollar by the trade, and that he would give time until Henderson was conveniently able to pay the note, were merely vigorous exercises of a negro trader's professional skill in falsehood to his dear Uncle Johnny, then it appears to me that such a belief was not without evidence to support it, and if, believing this, they called it *fraud*, and held the contract void, no court will hold that the term *fraud* was a misnomer. I repeat, then, that the whole of the evidence should have gone to the jury, and in ruling part of it out the court did more for the plaintiff than it ought to have done.

Upon the 8th assignment of errors :

It is to the overruling of the plaintiff's motion for a new trial. I know that this question indirectly brings up the correctness of the court's ruling on the instructions asked, but it brings them up subject to this principle, that if the result has been according to law, the court will not grant a new trial though error may have been committed in some charge by the court.

To prove that a proper result has been reached in this cause I need only refer to one fact in the cause. It was directly proved by two witnesses that this contract was made on the Sabbath day, pp. 22 and 23. It was not disproved by a single witness (*Kounts* v. *Price & Dickson*, 40th Miss. R. 341).

Edward Herndon *v.* James Henderson.

But it is insisted that defendant gave in his pleadings no special notice of this defence, and that therefore he could not give evidence of it under the plea of non-assumpsit.

There are two answers to this position:

1. If the doctrine were correct it should have come in the form of an objection to the evidence on the trial, and not on a motion for a new trial. A court will not grant a new trial because the party did not raise an objection to the evidence which he might have raised; the reason is obvious: if the objection had been raised when the evidence was offered it might have been obviated by an amendment of the pleadings or notice, on terms imposed by the court.

But it may be said that the objection was taken in the form of an instruction to the jury (13th) which the court refused. The answer is the same—it should have been made when the evidence was offered. The court, in charging the jury, could only instruct on the evidence as it was before the jury, and not upon what would have been the evidence if plaintiff had made the objection. It is also true that the court cannot grant a new trial on this feature of the cause if in that respect the right result was reached, because no exception was taken to the court's overruling that instruction.

2. The doctrine is not correct that the defendant could not give this evidence under the general issue without special notice of that defence.

This idea has its origin in decisions of the English courts made since the act 4 William IV. (about 1832)—decisions made under parliamentary rules of practice then made; one of which provides that thereafter the plea of non-assumpsit in actions found on notes, &c., shall put nothing in issue but the execution of the note, and all other matters must be specially pleaded. 1 Sel. N. P. 122. 1 Tidd's Prac. 646. They show the parliamentary rule and the charges made thereby, but they have no force here. The English decisions before 1832 and the American authorities prove that anything which shows that the claim sued on never created a legal liability, may be given in evidence under non-assumpsit, such as want of consideration;

fraud and illegality.   2 Sm. & M. 87; 6 ibid. 42; 23 Miss. R. 320; 32 ibid. 246; 15 J. R. 230; 13 ibid. 56; 4 Pet. R. 426; 7 Cranch, 565; 1 Sel. N. P. 122 and note; 1 Tidd's Pr. 646; 1 Ch. P. C. 215, 472, 512; see also 40 Miss. R. 341.

The only possible response to the foregoing position is that our statute changes the rule.   The only clause of the statute that can possibly apply to this case is the 1st clause of art. 97, p. 493.   To come within that clause, the evidence proposed must be " affirmative matter in avoidance which by law may be proved under the general issue."   This defence could be proved under the general issue, but is it " *affirmative matter in avoid-ance ?* "   I always thought that a plea in avoidance was one which admitted the cause of action, but avoided it by some other event.   I cannot conceive that a defence in avoidance can be set up to a void contract.   This clause plainly applies only to such matters as payment, accord, and satisfaction, and other affirmative pleas, in avoidance of a valid contract, which by the common law could be given in evidence under the general issue. (See authorities cited.)   The statute was intended to restore consistency in this kind of pleading, and therefore in such cases notice was required; but it was never intended to change the rule of pleading where the original liability is denied, where only the contract alleged in the declaration is in issue.   Let us test this: Suppose I had put this defence in the form of a special plea, I should certainly not have confessed the plaintiff's cause of action and pleaded illegally in avoidance, but I should have denied the plaintiff's cause of action and set up a special fact in support of the denial.   That is all.

The statute, it appears to me, is wholly inapplicable to the question.   It would be equally inapplicable if the defence was total want of consideration, fraud, gaming, or any other which denied the original liability.

Upon the Sunday question alone the verdict was right, and the court will not grant a new trial, whatever may be its opinion on the question of fraud.

Upon the evidence of fraud the verdict is sustained by the testimony.   I shall neither repeat nor enlarge upon the

Edward Herndon *v.* James Henderson.

argument already made on that point. It was a question for the jury, upon which both the parties and other witnesses were examined; if from the evidence they believed the fraud and falsehood existed, this court will not disturb their ver-. dict.

Upon the whole, it is very apparent that the case resulted correctly. It is a case in which one party or .the other must lose the value of the negro. Herndon, therefore, if the law is not with him, has no right to complain of the hardship. The court cannot know whether the jury found their verdict on the Sunday question or the fraud question, and as no exceptions were taken to the court's instructions this court cannot disturb the verdict unless the verdict is grossly against the evidence *on both questions.*

SHACKELFORD, C.J., delivered the opinion of the court.

This was an action of assumpsit in the First District of Hinds Circuit Court founded upon a promissory note in the following words :

" $1600.                                  HINDS Co., Miss.

" Twelve months after date, I promise to pay Edward Herndon sixteen hundred dollars, value received.

                                        " JAMES HENDERSON."
    " Dec. 28, 1861."

Henderson filed the plea of non-assumpsit, and plea ·of pay- ment, with notice of set-off of $200—also filed, with his plea of the general issue, notice that he was not liable on said note, and would prove, at the trial, " that the contract was illegal, being given for a supposed slave. That the consideration had failed. That the contract contemplated Confederate money. That he would establish ·what, if anything, in specie, the plaintiff has a right to recover."

Plaintiff in error filed replication to the plea of payment, and joined issue with defendant in error on his plea of the general issue. Upon these issues, the case was tried, and verdict for defendant in error.

38

A motion was made for a new trial and overruled by the court, and bill of exceptions taken to the rulings of the court, in which all the testimony introduced by both parties, the exceptions to the introduction of the testimony admitted, over the objections of plaintiff's counsel, and all the instructions given and refused are embraced. Hence the case is brought into this court by writ of error.

The first ground of error assigned for reversal here is, " that the court below erred, in permitting the defendant in error to give evidence as to the conversations, assurances, arguments, and conditions of the trade, spoken of between the contracting parties, prior to the time such contract was reduced to writing and signed by the parties, and at the close of the trial ruling out part of it."

In determining the question raised by this assignment, it becomes necessary to set out here all the testimony in the case by and for the defendant in error,—which is as follows :

The defendant in error testifying in his behalf stated : That the promissory note sued on in this action was executed for the purchase of a negro girl, bought of plaintiff, and delivered to witness on the day the note was executed. The girl was about fifteen years of age, likely and a good servant.

The plaintiff on the day of the sale represented her to witness as a good cook, seamstress and washerwoman, and ironer. She was not a good seamstress ; she did sew some for the family though, waited in the house, and was a good house servant.

She was not a very good cook—washed and ironed pretty well ; she was a good, serviceable, likely servant, sound and healthy ; plaintiff and witness made the trade the latter part of December, 1861. She had two children while witness owned her, and is still with him.

There was some Confederate money in circulation in the country then, but very little to the best of witness's recollection. Witness contemplated paying the note at its maturity in Confederate money.

Nothing was said, that witness now remembers, between

Edward Herndon v. James Henderson.

plaintiff and witness, as to what kind of money payment should be made in when the note fell due.

The currency of the country in December, 1861, consisted of Louisiana money, some gold and silver, &c. The Confederate money was then about as good as any other currency, very little if at all depreciated.

Plaintiff at first asked witness $2000 for the girl; witness refused to give that amount, and $1600 was the price agreed upon.

Witness was reluctant at first to trade or buy the girl, on account of the dangerous condition of the country at the time. Witness made a good many objections to buying; the plaintiff tried to remove them all. Witness said he was afraid the Confederacy would "go up," and witness would lose the negro; plaintiff told witness it would not, and if it did, witness (calling him "Uncle Johnny") should not pay a dollar for her.

He said he would never disturb or trouble witness about the note; he said witness should not lose a cent by the trade. Plaintiff said if witness could not pay when the note fell due, he would wait for the money.

Plaintiff used a great deal of talk and persuasion to induce witness to trade, and purchase the girl.

He talked to witness a great deal, and witness finally concluded to purchase.

The note was executed, and so also was a bill of sale, on the day the trade was made. Witness produced the bill of sale, and it was read to the jury as proof.

Which is in these words:—


"BILL OF SALE."

"Received of James Henderson, sixteen hundred dollars, in full payment of a negro girl named Jane, aged about fifteen years. Said negro I warrant sound in body and mind, and a slave for life. December 28, 1861.     EDWARD HERNDON."


The girl at the time of the sale was worth one thousand dollars in gold.

Witness met the plaintiff after the surrender of the Confed

eracy. He spoke to witness about the note given for the purchase-money of the girl, and asked witness to pay it. Witness told him he could not pay it all, but would pay him $800 for the whole note. Witness said *nothing* to plaintiff about his promise not to collect the note, and that he ought not to demand payment, and that the note was conditional.

The next witness for defendant in error, John Cook, testified as follows :—

" I was present at the camp of plaintiff on the day when the defendant bought the negro girl from plaintiff.

" I heard some conversation between the parties in regard to the trade.

" Defendant seemed reluctant to trade or buy, saying that the condition of the country was dangerous, and he feared the Confederacy would ' go up.'

" Plaintiff told him it would not ' go up,' and if it did, he would not collect the note, or would not trouble him for the money, or something of that kind.

" I heard neither party speak of any particular, currency in which the note was to be paid. The circulation of the country was composed of Louisiana money, shin-plasters, railroad money, some gold and silver, and some Confederate money.

" The latter had not been long issued by the government, and was but little depreciated.

" I drew the note sued on in this action, and also the bill of sale signed by the plaintiff.

" I affixed the true date to them. I neither dated them backward or forward.

" The trade was made on Sunday. I remember it was Sunday because it was a holiday, and several overseers were at the camp, because it was an idle day. I know the trade was on Sunday. I did not hear all the conversation between the parties relative to the trade.

" They walked apart from the persons assembled at the fire, at one time.

" I heard nothing that passed between them there. The plaintiff at the time was a negro trader."

Edward Herndon *v.* James Henderson.

Defendant introduced his son, David Henderson, who testified in defendant's behalf as follows :—

" I was at plaintiff's camp when defendant purchased the girl; defendant is my father.

" He was unwilling to purchase on account of the condition of the country.

" He was afraid the Confederacy would ' go up.'

" Plaintiff talked to him a great deal, in order to induce him to purchase.

" Told him he would not call on him for the money, if the negro was lost by the result of the war. Defendant took the negro home the day he bought her. This occurred on Sunday. I am sure it was Sunday."

The counsel for plaintiff in error objected to all the testimony of defendant in error, John Cook, and David Henderson, going to the jury, relative to the conversations between the plaintiff and defendant at the time of the trade, and before the same was reduced to writing, and objected at the time to all questions asked the witnesses by defendant's counsel, calculated to elicit such evidence as the loose remarks of plaintiff, and his alleged promise not to collect the note.

The court decided, as the objections were severally made to the testimony of said witnesses, that the same should go to the jury, to be subsequently ruled out, if the court should consider it improperly admitted.

. To which rulings of the court below, the plaintiff excepted at the time, and now makes these rulings as grounds for his first assignment of error.

The defendant in error had a right to introduce testimony to sustain his grounds of defence, set out in his notice filed with the general issue.

" That the note was given for a slave, and that the consideration had failed, and that Confederate money was contemplated as the kind of funds the note should be paid in." All the testimony of these witnesses tending to establish these grounds of defence, was properly admitted by the court.

On the production of the bill of sale by defendant in error

the court should have promptly ruled out from the jury all of James Henderson's testimony stated by him, touching the qualities of the slave, conversations, assurances, arguments, conditions, and verbal warranties, prior to the execution and delivery of note and bill of sale for the slave.

It was illegal testimony, tending to enlarge the terms of the written contract, and add to it conditions abandoned by defendant when he received the bill of sale of plaintiff, for the slave.

The court should have excluded all the testimony of Cook and David Henderson from the jury, in which they testify to the same facts, testified by the defendant in error, and objected to by plaintiff in error.

The court below excluded from the jury "the promises of the plaintiff not to collect the note if the Confederacy failed."

Although this should have been done, we think the course subsequently taken by the court regarding this illegal testimony sufficiently remedied the evil effects it may have had on the minds of the jurors, in giving the following instructions asked by the plaintiff in error, which virtually ruled out the testimony complained of by the directions therein contained, as to the weight and consideration they should place upon the same in making up their verdict :—

"4. Instruction for plaintiff.—A mere voluntary promise without consideration, made by a bonâ fide creditor not to sue or to demand payment of his debt on the happening of a contingency, is not binding in law, and the legal right to collect the demand by law is in no manner impaired by such promise."

"5. Instruction for plaintiff.—All evidence as to the conversation, offers, and propositions of plaintiff and defendant is merged in the written contract, and must not be considered by the jury as evidence, in finding their verdict."

"6. Instruction for plaintiff.—Unless it appears in evidence that the alleged promise of plaintiff not to demand payment of the note sued on, in the event that slavery should be destroyed by the war, constitutes a part of the note sued upon, or is inserted in the bill of sale for the slave, or otherwise

Edward Herndon *v.* James Henderson.

reduced to writing by the parties, the jury should not be governed by such alleged promise, in making their verdict."

" 16. Instruction of plaintiff.—No warranty as to the slave not contained in the bill of sale, can be considered by the jury."

These instructions cover all the illegal testimony, and clearly point out to the jury that they should entirely disregard the the same in arriving at their verdict.

We, therefore, are of the opinion that this assignment, under the circumstances, is not well taken.

The second ground of error assigned is, that the court erred in refusing to grant plaintiff's thirteenth instruction :—

" There being no special plea that the contract in this case was on Sunday, and no notice given of that matter under the plea of the general issue, the evidence relating to that matter should not be considered by the jury."

Before the adoption of the Revised Code of 1857 by our legislature, proof of the execution of a contract on Sunday could be given in evidence under the general issue, without notice to the plaintiff.

Article 97 of the Revised Code, p. 493, altered this practice, " and requires the defendant to give notice with the plea of the general issue of any affirmative matter in avoidance which by law may be proved under such plea, *otherwise such matter shall not be allowed to be proved at the trial.*" And the defendant may in all cases " plead the general issue, and give written notice therewith of any special matter which he intends to give in evidence in bar of the action, and which he would be otherwise obliged to plead specially."

The legislature clearly intended to limit the defendant to such proof as he should give notice of his intention to introduce at the trial, and prohibits him from proving anything else.

Was the defendant under this statute required to give notice of his intention to give in evidence, under the general issue, that the note and bill of sale, and contract for the sale of the slave, mentioned in the bill of sale, was made on Sunday?

We think he was.

The note did not bear date on Sunday, and unless the defendant in error could establish the fact by extrinsic evidence of an affirmative nature, that the sale was made and completed on Sunday, and that note and bill of sale were written on same day, how could he otherwise avoid his liability on the note sued on on that ground, having admitted the execution of the note and the consideration?

He had to prove affirmatively that the sale and delivery of the slave, and the execution and delivery of the note and bill of sale for the slave, were all completed on the Sabbath of the 29th of December, 1861, and not on the 28th day of December, 1861, the date affixed to the note and bill of sale.

The court erred in permitting any testimony to go to the jury, showing the date of the purchase, &c., in the absence of all notice from defendant in error to plaintiff in error, of his intention to introduce such testimony; it was in violation of that part of the statute which declares, that unless such notice is given, otherwise the matter in avoidance "shall not be allowed to be proved on the trial," which is mandatory.

Such a course took the plaintiff in error by surprise, cutting him off from all rebutting testimony, and giving the defendant in error an advantage at the trial the law cannot sanction.

The court could, at any time before the retirement of the jury, rule out this testimony, and should have given the plaintiff's 13th instruction.

It was error to refuse it.

The third ground of error assigned is the refusal of the court below to give the 14th instruction of plaintiff in error.

This instruction is nearly identical with plaintiff's 13th instruction, and should have been given by the court.

We deem it unnecessary to notice any of the other grounds of error assigned, except the last.

The overruling of the motion for a new trial.

This motion was based upon several grounds. The only grounds we will notice are, "that the court erred in giving instructions, and that the verdict was contrary to and in disregard of the instructions of the court."

Edward Herndon *v.* James Henderson.

The court gave the 10th instruction asked by plaintiff: " All evidence of defendant of which no notice is conveyed to plaintiff in the notice filed with his plea of the general issue, first pleaded in this case, is excluded from the jury, and should not be considered by them, except the notice of set-off filed under the plea of payment."

But refused to grant the plaintiff's 13th instruction, which is, "there being no special plea that the contract in this case was on Sunday, and no notice given of that matter, under the plea of general issue, the evidence relating to that matter should not be considered by the jury."

There being no notice filed with defendant's plea of general issue, that he would introduce at the trial proof to show the sale of the slave, the execution and delivery of the note sued on was on Sunday, the 29th of December, 1861, we are at a loss to see why the learned judge did not give the 13th instruction of the plaintiff in error, after he had given plaintiff's 10th instruction.

To have been consistent, he should given both instructions, or refused both.

The court gave the 5th instruction of defendant, which is as follows :—

" If the jury believe from the evidence that the contract was made on Sunday, they must find for the defendant, whether the note sued on is dated on Sunday or not."

It was error to give this instruction, after having directed the jury in plaintiff's 10th instruction to disregard the testimony they are required to notice in defendant's 5th instruction.

The jury were left to adopt such course as they might see proper ; to regard or disregard either instruction in making up their verdict ; they were left virtually without any guide for their deliberations on the most important question before them in the cause. It is evident from the verdict, that they were influenced by the direction laid down by the court in defendant's 5th instruction, and found their verdict upon evidence that had been ruled out by the court by the instructions given for the plaintiff in error..

For these errors we think the plaintiff in error is entitled to

a new trial. The judgment is therefore reversed, the verdict set aside, and the cause remanded for a new trial.