IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00404 COA

DOUGLAS D. WILLIAMS A/K/A DOUGLAS

DWAYNE WILLIAMS APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. WILLIAM F. COLEMAN

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: CHARLES E. GRIFFIN

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: JEFFREY A. KLINGFUSS

DISTRICT ATTORNEY: EDWARD J. PETERS

NATURE OF THE CASE: CRIMINAL-FELONY

TRIAL COURT DISPOSITION: CT I MURDER: CT II MURDER: CT III MURDER: CT I SENTENCED TO LIFE: CT II SENTENCED TO LIFE; SENTENCE TO RUN CONSECUTIVE TO CT I; CT III SENTENCED TO LIFE; SENTENCE TO RUN CONSECUTIVELY TO CT I AND CT II

MOTION FOR REHEARING FILED: October 14, 1997

PETITION FOR CERTIORARI FILED: December 29, 1997

MANDATE ISSUED: 4/10/98

BEFORE THOMAS, P.J., HERRING, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:

Douglas Williams was convicted of three counts of murder in the Circuit Court of Hinds County and sentenced to serve three consecutive life terms. He appeals, arguing that the trial court should have granted him bail pending his appeal, that the trial court erred in denying his motion for a new trial where the jury founded its verdict on an erroneous jury instruction, and the court erred in allowing Williams to be convicted of a crime not charged in the indictment. Finding no error, we affirm.

## FACTS

On November 14, 1993, around 2:30 a.m., Roger Harris was standing in the center line on Mill Street in Jackson, waiting for traffic to pass so that he could cross. A black Jeep Cherokee driven by Harold Williamson passed him going north on Mill Street. Harris, thinking the Jeep was trying to hit him, fired a handgun at the Jeep.

The shot hit Harold Williamson's sister in law, Doris, who was riding in the back of the Jeep with Harold's brother, Hosea. Harold's wife, Sarah, was riding in the passenger seat next to Harold. Harold stopped the Jeep. Hosea got out and confronted Harris as to why he was shooting at them, and Harris shot him in the legs. Harold got out of the Jeep and fired his weapon towards Harris. Then he got back into the Jeep and attempted to drive it to pick up Hosea. While Harold was trying to get Hosea into the Jeep, two of Harris's friends came out of the nightclub and started shooting at the Jeep. One of Harris's friends was the defendant, Douglas Williams, and he was shooting a nine millimeter pistol. The other friend was shooting an assault rifle.

After Harold was shot, he wrecked the Jeep by hitting a light pole. Harold, Hosea, and Doris died. Sarah, Harold's wife, survived and testified at trial.

## DISCUSSION

### I. *Appeal bond*

Williams argues that the lower court should have granted his request to be released on bail pending his appeal. The trial court had discretion to deny bail. "Where the defendant has been convicted of treason, murder, rape, arson, burglary or robbery, the granting of bail is within the discretion of the trial judge..." UCRCCP. Rule 6.02. The Mississippi Code also allows a judge discretion in deciding whether to grant bail when an appeal is pending. See Miss. Code Ann. §99-35-115 (Rev. 1994). The defendant in this case was convicted of three counts of murder. The judge did not abuse his discretion in denying bail.

### II. *Jury instruction on aiding and abetting*

Williams argues that his conviction should be discharged because the jury based its finding of guilt on an erroneous jury instruction and expressly stated that it would not have found the defendant guilty on the remaining instructions.

The jury instruction at issue reads:

The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Douglas D. Williams, on or about November 14, 1993, was present and knowingly, intentionally and wilfully joined and participated with another or others who killed any of the deceased persons with the premeditated and deliberate design to effect the death of them, or either of them, with malice aforethought, you should find the defendant "guilty as charged" as to the deceased persons who were so killed by such other or others with whom he so joined and participated.

You should also find the defendant, Douglas D. Williams, "guilty as charged" if you find from the evidence beyond a reasonable doubt that either or all of the deceased persons were killed as the result of conduct eminently dangerous to human life and evincing a depraved heart, although without any premeditated design to effect the death of either or all of the deceased persons, and not in necessary self-defense, if you find that Douglas D. Williams was present and knowingly, intentionally and wilfully joined and participated in said conduct.

During deliberations, the jury sent a note to the court which read:

The jury would like to know if the second paragraph of jury instruction number 9 is an accurate statement of the law.

The court answered the jury's question with a simple, "yes."

There is no question that the jury relied on the instruction, because when it returned its verdict of guilty on all three murder charges, it included a note which read:

If appropriate, the jury would like for the court to know that the verdict is based on jury instruction number 9, paragraph 2.

Upon request from defense counsel and over the objection of the State, the judge asked the jury, "Am I to assume from that [the note] that you would not have found the defendant guilty but for Instruction Number 9, Paragraph 2?" The foreman answered, "That's correct," and the rest of the jury agreed.

If a defendant is proven to have aided and abetted a crime, he can be indicted as a principal and convicted as such. *State v. Labella*, 232 So. 2d 354, 355 (Miss. 1970). As long as the State proved that the crime charged was actually committed and that the appellant had aided and abetted in its commission, then he could be convicted as a principal. *See Smith v. State*, 115 So.2d 318, 323 (Miss. 1959).

Williams's first argument is that he was on notice from the indictment that he was being charged with being the principal, but on the eve of trial learned he was to be tried as an aider and abettor. He argues that this change in theory was prejudicial. Without knowing the preparations made by defense counsel, it is sufficient to say that counsel must prepare for what the indictment charges. As set out above, an indictment as a principal permits trying and finding guilt of an aider and abettor.

The next argument is that the instruction inaccurately stated the law and was confusing. The alleged defect arises from the fact that the principal need not have had a design to cause death, but only have committed an act eminently dangerous to human life. Williams as an aider and abettor must then have "knowingly, intentionally and willfully joined" in the conduct. As Williams states, "one cannot share a knowing, intentional and willful state of mind with someone to kill a human being when the person with whom they are supposed to share this knowing, intentional and willful state of mind is found not to have said state of mind."

Williams is mixing sections of the instruction. The murder statute permits someone to be convicted even if that person had no design to cause death, if the person committed a sufficiently dangerous act that caused the death. An aider and abettor must "knowingly, intentionally and willfully" join in the commission of the inherently dangerous act, but neither principal nor abettor need have intended the death of the victim.

The instruction was an accurate statement of the law, and permits the verdict reached.

### III. *Motion for new trial*

Williams argues that because the jury instruction was erroneous, his motion for a new trial should have been granted. Because we find the instruction was proper, it is not necessary to address this issue.

### IV. *Variance between indictment, evidence, and instructions*

Williams argues that he was convicted of a crime that was not charged in the indictment. He argues

that the State was allowed to present several different theories of murder when he was only charged in the indictment with deliberate design murder and not depraved heart murder. He argues it was error for him to be forced to defend under these different theories.

The defendant was indicted under section 97-3-19 Miss. Code Ann. (Rev. 1994), which reads, in pertinent part,

§97-3-19. Homicide; murder defined; capital murder.

(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

(a) When done with deliberate design to effect the death of the person killed, or of any human being;

(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual . . . .

Williams argues that because the indictment only has the language in §97-3-19(1)(a), and the jury came back with a verdict based on § 97-3-19(1)(b), that the court should reverse his conviction as being convicted of a crime outside of the indictment. He argues that the instruction constituted an amendment to the indictment and cites the long standing rule that "the state can prosecute only on the indictment returned by the grand jury and . . . the court has no authority to modify or amend the indictment in any material respect." *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990).

*Quick* dealt with the aggravated assault statute. Our supreme court has distinguished *Quick* in murder cases, and held that where the defendant is indicted under §97-3-19(1)(a) the defendant can be convicted under §97-3-19(1)(b) because the two sections have "coalesced."

There is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a). *Mallett v. State*, 606 So.2d 1092, 1095 (Miss. 1992).

*Catchings v. State*, 684 So. 2d 591, 598 (Miss. 1996).

Williams was not convicted of a crime outside the indictment. He was charged under Section 97-3-19 and convicted under the same statute.

**THE JUDGMENTS OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF THREE COUNTS OF MURDER AND THREE SENTENCES OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONSECUTIVELY, ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.**

**MCMILLIN, P.J., NOT PARTICIPATING.**