## DANIEL MOORE *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Manslaughter. Evidence. Instruction.*

    Where a defendant, indicted for murder, was convicted of manslaughter, he cannot complain upon appeal:

    (*a*) Of errors in the admission of testimony, the only tendency of which was to show malice; nor

    (*b*) Of an instruction directing a conviction of manslaughter upon the belief of facts which would have warranted a conviction of murder.

2. SAME. *Statements of deceased. Offered by defendant.*

    Statements made by the deceased, after the fatal encounter, as to which shot struck him, and as to who was to blame, are not admissible in evidence in favor of the accused on trial for murder, being neither a part of the *res 'gestae* nor of a dying declaration.

3. SAME. *Deceased unarmed. When state can prove it.*

    Where defendant, on trial for homicide, testified that when he first shot the deceased the latter was reaching behind him or to his hip pocket as if to draw a pistol, it is competent for the state to show that the deceased was unarmed.

4. SAME. *Instruction. Reasonable doubt.*

    On a murder trial an instruction to convict if, after considering all the evidence, the jury conscientiously believe, beyond a reasonable doubt, that the defendant is guilty, does not in its use of the word "conscientiously" prejudicially qualify the doctrine of reasonable doubt.

5. SAME. *Assuming facts.*

    In homicide, a charge that if deceased cursed defendant, and defendant, while under the heat of passion, aroused by the insult, secured a pistol and killed deceased, he would be guilty of manslaughter, was not subject to the objection of assuming that defendant was in the heat of passion aroused by having been cursed by deceased.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Daniel Moore, the appellant, was indicted and tried for the murder of one Ellis Poole; he was convicted of manslaughter, sentenced to the penitentiary for twenty-five years, and appealed to the supreme court.

A statement of the facts other than the one found in the opinion of the court is unnecessary to an understanding of the decision.

*Thomas H. Woods,* and *Ethridge & McBeath,* for appellant.

Upon what evidence was the jury justified in rendering a verdict of manslaughter? There is not an element of manslaughter in the case. The state's testimony, if believed, made out a case of pure and simple murder. If Moore was making threats, as testified by witnesses, in the drug store before the killing; if he was seeking to annoy and make Poole provoke a difficulty, as testified by Driscoll and Saunders, in the barber shop just prior to the shooting for the purpose of killing Poole; if he went to Vinson's store and procured a pistol for the purpose of going back and renewing the difficulty with Poole, and stopped near the path in the old field for Poole to come along to shoot him; if he ran across the field hallooing "halt," and Poole threw his hands up and asked him not to shoot, and he shot Poole, as Vina Jordan, Kate Echols, and Walter Johnson say he did; if the shot that hit Poole was fired by the appellant while he, Poole, was in the ditch, the appellant was guilty of murder —nothing more, nothing less. On the contrary, if Poole was smarting under some supposed or real wrong done him by the appellant, and was hunting the appellant for the purpose of provoking a difficulty on account of such wrongs; if he was threatening to kill or do Moore some great bodily harm, as Muse, Langford, Gibson, Collier, and George Gilmore testified, and went across the old field to where Moore was sitting and renewed the difficulty with Moore, and Moore backed away from him and tried to persuade Poole to settle the matter without trouble, and he made a demonstration as if to draw a deadly weapon

and do Moore some great bodily harm, or take his life, and if the shot that hit Poole was the first shot fired, Moore was justified in shooting, and he was entitled to an acquittal.

Instruction No. 3 is objectionable for several reasons. In the first place, the instruction starts out with an abstract proposition of law, and assumes that certain facts exist.

The court will readily see the effect and unjustness of this instruction. It assumes that Moore shot while still in the heat of passion. This instruction has been condemned by this and all courts. *Brown* v. *State,* 72 Miss., 997; *Thompson* v. *State,* 73 Miss., 584.

Again, the instruction is erroneous because it separates that portion of the evidence most damaging to appellant, and tells the jury if they believe these facts, he is guilty of manslaughter. *Levy* v. *Holberg,* 71 Miss., 66; *Prime* v. *State,* 73 Miss., 838; *Burt* v. *State,* 72 Miss., 408; *Jackson* v. *State,* 66 Miss., 89; *French* v. *Sale,* 63 Miss., 386.

It tells the jury that if they believe that "Poole cursed appellant for a son of a bitch, and Moore, while still in the heat of passion, shot and killed Poole," etc., he is guilty of manslaughter.

The fifth instruction given for the state is an attempt to do what has been condemned by the court in the case of *Ellerbe* v. *State,* 79 Miss., 10; *Powers* v. *State,* 74 Miss., 777 (21 South. Rep., 657). It is clearly an attempt to define a reasonable doubt. The jury may conscientiously believe from the evidence that defendant is guilty, and yet have a reasonable doubt as to such guilt. They are not told that "the evidence must satisfy their minds and conscience beyond a reasonable doubt," but are told "if after considering, comparing, and weighing all the evidence they conscientiously believe from all the evidence beyond a reasonable doubt that he is guilty, that is sufficient, and they should convict."

We do not think the instruction meets the approval of the court in the case of *Burt* v. *State,* 72 Miss., 408.

We submit that the sentence was a harsh one; that the instruction complained of above was wrong, and should be met and overthrown by this court. By sec. 28 of art. 3 of the constitution of this state forbidding the infliction of cruel and inhuman punishment it would appear to layman and lawyer alike that the trial court in the imposition of the sentence pronounced in this case subjected this young man to a punishment both cruel and unusual. Under the law of this state one may be punished by simple fine or by imprisonment in the county jail, and we submit to the best judgment of this appellate tribunal whether a sentence of twenty-five years in the penitentiary in view of all this record discloses is not cruel and unusual punishment.

*Amis & Dunn,* on the same side.

The first instruction for the state contains two propositions—first, a definition of the crime of murder, in the language of the statute; second, an attempted statement of such facts as under the law would warrant a jury in rendering a verdict of guilty.

The first proposition stated in the instruction is correct, but the second is incorrect, in so far as it deals with the question of self-defense. It tells the jury that "if the jury believe from the evidence . . . that the defendant shot and killed the deceased, not in his necessary self-defense, and at a time when he was not in danger of loss of life or limb or great bodily harm at the hands of the defendant, . . . then he is guilty," etc.

This instruction incorrectly states the law of self-defense. By its terms it denies to defendant the right of self-defense, except on condition of the actual existence of actual danger to life or limb. The law is, that the danger may be real or apparent, and that if merely apparent it will justify the exercise of the right of self-defense. The instruction is fatally defective. See *Goodwin* v. *State,* 19 South. Rep., 712; *Dyson* v.

*State,* 26 Miss., 362; *Bang* v. *State,* 60 Miss., 571; Code 1892, § 1152, paragraphs F and E.

The second instruction is fatally vicious. By it the jury are told that "if they believe . . . that defendant . . . shot and killed Ellis Poole because he feared or apprehended an attack on the part of the said Poole, . . . then and in that case the court further charges the jury that mere fear of a human being . . . will not justify the defendant . . . in resorting to the use of a deadly weapon . . . if at the time of the very killing such party (deceased) was doing nothing nor attempting to do anything that would justify the apprehension," etc.

This is wrong. The law is that if at the time of, or immediately before, the firing of the fatal shot by the accused, the conduct and language of the deceased were such as to indicate a present design then and there to kill the accused or do him great bodily harm, then the accused was justified in anticipating the attack by firing first.

Before it springs upon its victim, the lion utters its roar. Before it leaps, the panther screams. When the hungry wolf scents blood, it howls. All men, aye, even the beasts of the field, know the meaning of these sounds. They know that it means bloodshed, and a present intent then and there to kill. Can it be that the language of a man who is angered to frenzy, and who stands over his intended victim and tells him that it is too late to run, that death or great harm awaits him, is not to be construed in the same way? That words, as well as acts, may be taken to indicate intent? Surely not. Yet the court tells the jury that defendant was not justified in using a deadly weapon unless the deceased did something, or was attempting to do something, which alone indicated danger. Surely such is not the law. Through all the ages language has been the means of communicating ideas among men, and when that language conveys a deadly meaning, and the attitude, appearance, and conduct of the person using it indicate danger and a present

intent to execute such meaning, surely one may judge of the danger and its imminence in the light of the language used, as well as the conduct of the deceased. Yet the instruction makes the right to the exercise of self-defense depend alone on the degree of violence of the overt act.

Again, the instruction tells the jury that the deceased must have been doing something at the very instant of the killing that would alone justify the accused in apprehending present and impending danger to life or limb. Such is not the law. The law is that if immediately before the killing the conduct and language of accused indicated a present intent in his mind then and there to kill defendant or do him great bodily harm, then the accused was justified in firing the fatal shot. It was not necessary for defendant to wait until the deceased was on equal terms with him, but if the defendant, judging from the conduct and words of the deceased immediately before the killing, had reasonable cause to apprehend or believe that deceased intended then and there to kill him or do him great bodily harm; that it was not to be put off till another time, but was to be then and there executed; that there was no escape, except to flee or kill his adversary, then he was justified in the killing. *Long* v. *State,* 52 Miss., 23; *Bang* v. *State,* 60 Miss., 571; *Cotten* v. *State,* 31 Miss., 504; *Fortenberry* v. *State,* 55 Miss., 403; *Kendrick* v. *State,* 55 Miss., 436.

The third instruction for the state tells the jury that if they "believe from the evidence in this case, beyond a reasonable doubt, that Ellis Poole cursed Dan Moore for a son of a bitch, and that Moore, while still under the heat of passion aroused by such insult, secured a pistol and shot and killed Poole, . . . then he is guilty of manslaughter," etc.

This instruction assumes that Moore's anger was aroused by the language of the deceased, which was not the case, as shown by all the testimony in the case on the point. On the contrary, Moore was all the time cool and free from anger or excitement. He was the man who wanted peace. The deceased was the

angry man.   It is the exclusive province of the jury to determine questions of fact.   See *Ellerbe* v. *State,* 79 Miss., 10; *French* v. *Sale,* 63 Miss., 386; *Brown* v. *State,* 72 Miss., 997; *Ledbetter* v. *State,* 61 Miss., 22; *Hogan* v. *State,* 46 Miss., 274.

*Williamson & Gilbert,* for appellee.

The state's theory in this case is that the appellant killed the deceased because he hated him and feared him in fisticuffs.   The evidence fully sustains the theory.

Touching the state's instructions on the proposition of murder, we submit that not only did the verdict of manslaughter cure the errors, if any, but the twenty instructions for the defendant, defining and elaborating the law applicable to self-defense, cured every error, if any, that may have been committed by the court in the instructions for the state.   A reading of these twenty instructions will be all-convincing that appellant had the benefit of every line of law applicable to self-defense.   We cite the following authorities in support of that proposition, and insist that they are conclusive: *Skates* v. *State,* 64 Miss., 644; *Nelson* v. *State,* 53 Miss., 212; *Scarver* v. *State,* 53 Miss., 407; *Hawthorne* v. *State,* 58 Miss., 778.

The third instruction for the state is not erroneous.   It does not take from the jury the province of finding and deciding every question of fact.   "Plain men in the jury box" in this day and time are not in the same class with jurors of the days of Coke and Blackstone.   In this advanced age, when the common people are of the highest intelligence, we should indulge a more liberal presumption as to their parts and capacities.   The jurors of our day are rational, reasoning men, endowed with the best type of common sense, and they have that independence of thought that eliminates the sway of passion and the leadership of sophistry and the tricks of the adroit.   The courts, in a measure, have recognized the ability of the juries of our country to separate the tares from the wheat in the final harvest, by viewing the record as a whole

and affirming if the verdict is correct in view of the whole record, notwithstanding any technical errors in admitting and excluding testimony. Erroneous rulings of the court on the evidence have reversed thousands, and erroneous instructions tens of thousands, of cases. The courts have gone yet further in their recognition of the intelligence and honesty of jurors by enlarging the competency of jurors who have expressed an opinion, as will be seen by the *Gammons case,* 85 Miss., 103 (s.c., 37 South. Rep., 609). The courts have also taken a long stride in favor of the ability of jurors to find correctly on the facts by viewing the instructions for each side, and thereby determining whether the law was correctly propounded to the jury in the case as a whole, as shown by the authorities hereinbefore cited. The presumption of innocence was impressed upon the minds of the jury by many instructions for the defendant. The principle announced in those instructions must have been indelibly impressed upon their minds; they could scarce refer to a single instruction for appellant and not face that proposition. It was uppermost and foremost in their minds when the summing up of the testimony was made.

*J. N. Flowers,* assistant attorney-general, on the same side.

There is but one question to be settled by the court in this case, and that is, Was it error to give the manslaughter instruction?

There is no merit in the criticism of counsel for appellant that this instruction assumes that the appellant's passions were aroused. If there is any such assumption, it is one in appellant's favor. It is the assumption that a mitigating circumstance was present.

One indicted for murder and convicted of manslaughter cannot complain here that the trial court admitted testimony which only tended to prove murder. He cannot defend the charge against him by showing that he was guilty of a graver offense.

One indicted for murder and convicted of manslaughter

could not complain that testimony was admitted which only tended to prove murder.

In the case at bar the instruction gave the defendant more than the law allows him. The facts set up in the instruction are insufficient, or at least are not conclusive of the question to reduce the killing from murder to manslaughter. The alleged assumption was itself insufficient to reduce the crime from murder to manslaughter. Admitting, as the instruction does, that the deceased called the accused a son of a bitch an hour or so before the killing, and that accused procured a weapon and while he was still mad and his passions aroused he killed deceased, under the circumstances enumerated, the accused was guilty of murder. The instruction told the jury that under these circumstances they might find him guilty of manslaughter. They found these circumstances to have existed, and on this finding, under this instruction, they returned a verdict for manslaughter.

Argued orally by *A. B. Amis,* for appellant, and by *V. W. Gilbert,* for appellee.

Cox, J., delivered the opinion of the court.

Appellant was tried on an indictment for murder, and convicted of manslaughter. Numerous errors are assigned. Some of these it is not necessary now to consider, because, in the light of the verdict, the action of the court complained of, even if erroneous, did not prejudice appellant. If the court erred in admitting testimony relative to the altercation in the barber shop and to the threat at the drug store, this evidently did not affect the result. The only effect of this evidence would be to show malice in the killing. The verdict of the jury involves a finding that there was no malice and acquits of murder.

There was no error in excluding the testimony of Dr. O. A. Harrison, in which he narrated a statement made by the deceased, after the shooting, as to which shot struck him and as to who was to blame for the shooting. This statement was not

a part of the *res gestae,* was not made under a sense of impending death, and is not within any of the exceptions to the rule against hearsay testimony. The court erred in admitting this over the objection of the state, and did not err in afterwards excluding it *sua sponte.*

There was no error in admitting the testimony of McNair, George and Lon Montgomery, and Sam Sheely touching the question whether or not Poole was armed at the time of the difficulty. Their testimony tended to show that deceased was not armed, and was proper to be considered by the jury for whatever it might be worth in passing upon the testimony of appellant that when he first fired on deceased he was reaching behind him, or to his pocket, as if to draw a weapon.

The state was allowed to show by Mrs. Poole, mother of deceased, over defendant's objection, that she had told him to hurry back before dinner; that she would have the money ready for him, which she testified, without objection, she had told him she would give him to pay his expenses to Vicksburg, and this is assigned for error. If erroneous, it clearly did not affect the verdict, and cannot avail to reverse the case.

It is contended that the fifth instruction for the state is erroneous. It reads as follows: "The court charges the jury for the state that they are not to convict the defendant unless they believe from the evidence beyond a reasonable doubt that he is guilty. Still, that does not mean that they must know that he is guilty, but if, after considering, comparing, and weighing all the evidence, they conscientiously believe from all the evidence beyond a reasonable doubt that he is guilty, that is sufficient, and they should convict." The use of the word "conscientiously" in this instruction is objected to as erroneously qualifying the reasonable doubt which should acquit. There is no merit in the objection. In this instruction the word is mere surplusage. If omitted altogether, the instruction is correct. Surely defendant was not injured by an instruction to the jury informing them that, in order to a conviction, they must con-

scientiously believe from all the evidence beyond a reasonable doubt that defendant is guilty. The instruction given does not substitute conscientious belief for belief beyond a reasonable doubt, but warrants a conviction only upon a conscientious belief of guilt beyond a reasonable doubt.

We come now to the third instruction for the state, upon which appellant chiefly relies for a reversal. It reads as follows: "The court charges the jury for the state that manslaughter is the killing of another in the heat of passion, without malice, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense; and the court further instructs the jury for the state that if the jury believe from the evidence beyond a reasonable doubt that Ellis Poole cursed Daniel Moore for a son of a bitch, and that Moore, while still under the heat of passion, aroused by such insult, secured a pistol and shot and killed Poole, not in malice, but in the heat of passion, and not in his necessary self-defense, then he is guilty of manslaughter, and the jury should so find." It is contended that this instruction is erroneous, as being upon the weight of the evidence and as assuming that Moore was under heat of passion aroused by having been cursed by Poole for a son of a bitch. We think the objection not well taken. The instruction, fairly construed, imports that the jury must believe from the evidence beyond a reasonable doubt not only that Poole cursed Moore for a son of a bitch, but also that Moore's passion was aroused by such insult, and that while still under the heat of that passion he secured the pistol and shot Poole. In one of the numerous briefs for appellant it is insisted that, save for the objections noted, the instruction is free from objection, as being an instruction strictly applicable by its terms to the crime of manslaughter. In another brief filed for appellant it is insisted that the instruction is incorrect, because, if appellant shot Poole under the circumstances stated in the instruction, he was guilty of murder. It is not necessary that we should say which of these conflicting views is correct. In

either view appellant was not prejudiced in his defense by the instruction. Self-defense was the sole defense relied upon by appellant. This defense was presented to the jury by numerous instructions which most liberally, exhaustively, and persuasively expounded the law applicable to that subject. The jury could by no possibility have acted in ignorance as to appellant's right to slay his antagonist, if apparently necessary so to do in order to save himself from impending danger to life or limb, actual or apparent. Their verdict of manslaughter can mean nothing less than that they were satisfied beyond a reasonable doubt that appellant did not act in justifiable self-defense. We cannot say that this finding of fact is not correct, and it shuts us up to the conclusion that appellant was guilty of either murder or manslaughter. A conviction of the lesser of these two crimes will not be set aside because had upon an instruction which, if incorrect at all, is incorrect only in this: that it directed a verdict of manslaughter upon facts which would have warranted a conviction of murder.

*Affirmed.*