CUMBERLAND v. STATE.

[70 South. 695.]

1. HOMICIDE. *Instructions. Malice. Burden of proof. Sufficiency of evidence. Reasonable doubt. Self defense. Opinion evidence. Conclusion. Hearsay. Trial. Rebuttal evidence.*

Where in a trial for murder the state's testimony was sufficient to sustain a conviction and the defendant's testimony made out a case of self-defense, an instruction for the state that, if the jury believed beyond a reasonable doubt that defendant shot and killed deceased, the use of a pistol was *prima facia* evidence of malice and an intent to murder, to overcome which it must be shown that at the time of the killing defendant was then in immediate, real, or apparent danger of losing his life or suffering great bodily harm from deceased, which danger must have been present and imminent at the moment of the killing, was erroneous, since in effect it shifted to defendant the burden of showing his innocence if the killing with a deadly weapon was shown.

2. SAME.

Such an instruction was further erroneous in not stating that the jury must acquit the defendant if they have a reasonable doubt of his guilt arising from the evidence or the want of evidence.

3. CRIMINAL LAW. *Reasonable doubts.*

In the trial of a murder case an instruction that the state must make out its case to a moral certainty, and until it does so, the accused is not required to do anything, and thereafter he need only raise a reasonable doubt of his innocence to entitle him to an acquittal, should have been given.

4. HOMICIDE. *Burden of proof. Self defense.*

It is not true that, if no excuse or justification of the killing is shown by the state's evidence, the defendant is guilty of murder unless he has by his evidence proven the excuse and justification and an instruction announcing this law should not have been refused defendant.

5. CRIMINAL LAW. *Opinion evidence. Conclusion.*

In a trial for murder a witness should not have been permitted to express his opinion that it "looked like there had been a crap game there," he should have stated the facts and let the jury draw their own conclusions.

6. CRIMINAL LAW. *Evidence. Hearsay.*

In a trial for murder the testimony of a witness, showing that the place of the killing had been pointed out to him by some one but that he did not know of his own knowledge where the killing occurred, was hearsay and inadmissible where it was not shown that he was correctly informed.

7. CRIMINAL LAW. *Trial. Rebuttal.*

In a trial for murder where a witness testified to a statement made to him by another witness in a doctor's office when the doctor was not present, it was not permissible to allow the doctor to testify what the other witnesses told him about the killing since such testimony was not in rebuttal.

8. CRIMINAL LAW. *Opinion evidence. Conclusion.*

It was error in a murder trial to permit testimony that a witness "reckoned that another witness had a son implicated in the killing; that is what they say" since this was purely hearsay testimony.

APPEAL from the circuit court of Neshoba county.

HON. C. L. DOBBS, Judge.

E. L. Cumberland was convicted of murder and appealed.

The facts are fully stated in the opinion of the court.

*G. E. Wilson,* for appellant.

Instruction number 7 to the jury is as follows, to-wit: "The court charges the jury for the state, that if the jury believes from the evidence beyond a reasonable doubt that Cumberland, with a pistol, shot Lidell, and thereby killing him, then the use of a deadly weapon is *prima-facie* evidence of malice and an intent to murder, and before this presumption is ever overcome it must be shown by the evidence in the case to the satisfaction of the jury, that at the time of such shooting with said deadly weapon, the defendant was in immediate, real or apparent danger of losing his life or suffering great bodily harm from Lidell, and such danger must have been urgent, present and imminent at the moment of the killing." The instruction violates one of the most sacred rights of defendant and absolutely deprives him of same in the consideration of this cause, by placing upon him the burden of proving his innocence. It is not the law, and never has been the law of Mississippi as we understand it, that the burden of proof in a criminal case, especially one of the magnitude of the case at bar, shifts to the defendant. In the instruction complained of the state requires the defendant to show by the evidence in the case to the satisfaction of the jury that he was in immediate danger of losing his life. The same instruction is perhaps more serious and more objectionable for the reason that it tells the jury that the danger under which appellant was placed at the time he took the life of deceased must have been urgent, present and imminent at the moment of the killing, absolutely excluding the well-established rule, and depriving the defendant of that benefit, which gave him the right to act when his danger is actual or apparent. This court has universally held to the rule, so far as we are able to ascertain, that when the danger to which defendant is subject is either real or apparent to a reasonable man under the circumstances presented to him, then he is under the law entitled to pro-

tect himself against an attack. It has never been the law that the defendant must be in actual danger, but if the danger only be reasonably apparent, then he is justified in acting; and yet the instruction complained of tells the jury not only that he must be in actual danger but that it must be urgent, present, and imminent at the very moment of the killing. *Blalock* v. *State,* 79 Miss. 520; *Ellis* v. *State,* 66 Miss. 44; *Haley* v. *State,* 63 So. 670; *Boykin* v. *State,* 86 Miss. 481; *Ford* v. *State,* 73 Miss. 734, 19 So. 665; *Herman* v. *State,* 75 Miss. 340; *Brandon* v. *State,* 75 Miss. 905, 23 So. 517; *Raines* v. *State,* 81 Miss. 489, 33 So. 19; *Riley* v. *State,* 68 So. 250.

Instruction number 8 given for the state is as follows, to wit: "The court charges the jury for the state, that if the jury believe from the evidence beyond a reasonable doubt that Cumberland shot and killed Lidell as charged in the indictment at the place of the supposed crap game, then under the law it is your sworn duty to find the defendant guilty of murder." This instruction is equally erroneous, and contains two fatal defects, and which under the law as announced by this court are sufficient to reverse the case. In the first place, the jury is instructed to convict the defendant if they believe beyond a reasonable doubt that he killed Lidell as charged in the indictment. This instruction is calculated to mislead the jury composed of men unlearned in the law and to call their attention from the other instructions in the case. It eliminates any idea whatever of self-defense, since the condition might arise where malice existed and yet when the homicide occurred, the defendant was acting in self-defense. We submit that this instruction is misleading, unfair, and highly prejudicial to the rights of defendant, and especially should be refused in a case where the issue at stake is so grave as the one at bar. Again it has been condemned by our court, universally, for assuming a fact which is untrue, or at least in controversy. The jury is told that if the killing occurred at the place of the supposed crap game, that it is its sworn duty to

find the defendant guilty. As has been shown in the discussion of the evidence in this case, there is no evidence of a crap game discovered on the day of the homicide, and not until a later day, all of which we have contended and still contend was inadmissible. As stated in the outset, the admission of this testimony was prejudicial; and it is now manifest to the court the purpose of injecting the crap game into the trial of this cause all through the taking of the testimony was to prejudice the minds of the jury; and in the instruction this purpose is manifest. Our courts have said that even where a question of fact is in controversy that it is error, and fatal error, for the court to instruct the jury in reference thereto. The learned district attorney manifestly injected this clause into the instruction for the purpose of enabling him to make a more effective and prejudicial argument to the jury. The logical effect this instruction would have had on any juror would have been that he considered it as an instruction or finding by the court itself that a crap game really did exist and was played by defendant and the deceased. *Oliver* v. *State,* 39 Miss. 523; *Fore* v. *State,* 75 Miss. 727; *Cooper* v. *State,* 31 So. 580.

In addition to Instructions numbered 7·and 8, given for the state, instruction 4, which is in the following language: "The court charges the jury for the state that murder is the killing of a human being with malice aforethought, and if the jury believe from the evidence, beyond all reasonable doubt, that Cumberland shot and killed Lidell and that the killing was done with malice aforethought, then he is guilty of murder and the jury should so find," is also fatally defective, in that it absolutely deprives the defendant of the right of self-defense. This instruction simply states an abstract proposition of law, when the proof in the case, both for the state and the defense, if the witness Jones' testimony is to be credited, shows that it was a controversy between the defendant and the deceased.

According to the contention of the defense, a full and complete case of self-defense was made, and yet the court by this instruction absolutely eliminated from the consideration of the jury the entire evidence of the defendant and his witnesses. Under no authority of law is the said instruction warranted, but is in conflict with every decision that we have been able to find rendered by this court.

For the fatal error in the instruction complained of for the state, we most earnestly insist that this case should be reversed.

Instruction number 12, as asked by the defendant and refused by the court, should have been given.

*W. C. Easterling,* for appellee.

Instruction number seven correctly announces the law. The instruction does not tell the jury that the burden of proof shifts. True it is that the burden of proof never shifts to the defendant. Under the law of this commonwealth an unexplained killing is murder. It has always been the law that malice is presumed from the deliberate use of a deadly weapon, and when the state proves the killing with a deadly weapon, the law presumes malice requisite to murder and the burden of procedure shifts. The instruction simply informs the jury that the law presumed malice from the use of a deadly weapon, unless the jury had a reasonable doubt from the evidence, that is, the whole evidence of the case, as to whether or not the defendant's life was in real or apparent danger at the hands of the deceased at the time of the killing. This instruction was given in *Guice's case,* 60 Miss. 714, by Judge Christman.

Instruction number six for the defendant told the jury that the presumption of innocence stood by the defendant throughout the trial, testifying as a witness as to his innocence and that it so remained until the moment the jury wrote their verdict.

Instruction number eight correctly announces the law. The instruction is as broad as the indictment. It informed the jury that if the defendant shot and killed Lidell at the place of the supposed crap game, as charged in the indictment, that he was guilty of murder. Surely he was guilty of murder if he "willfully, feloniously and of his malice aforethought" shot and killed Lidell at the place of the crap game.

Appellant had as liberal a set of instructions as any court could conscientiously give and, taking the instructions as a whole, appellant has no just cause to complain.

*George H. Etheridge,* assistant attorney-general, for the state.

Criticism of instruction number 7 for the state is without merit, because where a killing occurs with a deadly weapon, the presumption arises that the killing was malicious and wrongful and it must appear from the evidence that all the facts of the killing had been disclosed before this presumption is dispensed with, and in order to justify any theory of the rightful use of the weapon the facts must show that there was urgent, present and imminent danger of death or great bodily harm to justify the use of such weapon. If the instruction be conceded to be stating the law too strongly, still it is amply modified and explained in the other instructions, and taking all the instructions together and considering them as an entirety, it is perfectly manifest that the defendant was not prejudiced by the statement of law and the charges, and that he had all the rights accorded him by law stated in the instructions taken as a whole. It does not shift the burden of proof because the burden of proof is fully met by proving a killing with a deadly weapon. To overturn a case made with such proof is fully met by proving a killing with a deadly weapon. To overturn a case made with such proof it must appear from the facts proven that the

killing was justifiable or excusable or that there was an appearance of things leading a reasoning mind to that conclusion. The law of apparent danger and the right of appellant to act thereon is fully given in the instructions taken as a whole.

The criticism of instruction number 8 for the state is without merit because it is clear that if the defendant had unlawfully, wilfully, feloniously, of his malice aforethought, killed and murdered Lidell, at the place of the supposed crap game that he would be guilty of murder, and that is what appears in the indictment in the record on page five thereof and that is exactly what the instruction meant when it was first charged in the indictment. This instruction does not tell the jury to convict him if they believe he was shot at the crap game or at the ground known as the crap ground in the record, it does not eliminate self-defense, because if a person shoots unlawfully and willfully and with malice aforethought he cannot shoot in self-defense. The word "unlawful" clearly means such a killing is not self-defense because a killing in self-defense is lawful. The instruction does not assume that the killing had taken place at the supposed crap game but states that if it had occurred there and if it was of the character described in the indictment it would constitute murder.

There is no merit in the criticism of instruction number 4 for the state because malice aforethought is a term used in law to distinguish murder from every other kind of killing, and if the appellant wanted a definition of malice aforethought, it was his duty to ask for it. The term is generally, if not universally understood where English Jurisprudence prevails.

There is no merit in the contention of appellant that the court erred in refusing instructions because the law was fully, clearly, and distinctly given in the charges which were marked "given" by the court.

SYKES, J., delivered the opinion of the court.

The defendant, E. L. Cumberland, in February, 1913, in Neshoba county, shot with a pistol and killed one Will Lidell. He was convicted of murder and prosecutes this appeal.

The testimony for the state was sufficient to sustain the verdict of the jury, and that of the defendant made out a case of self-defense. Eyewitnesses to the homicide were introduced by both the state and defendant. The court gave the state the following instruction (No. 7):

"The court charges the jury for the state that if the jury believes from the evidence beyond a reasonable doubt that Cumberland with a pistol shot Lidell, and thereby killing him, then the use of a deadly weapon is *prima-facie evidence* of malice and an intent to murder, and before this presumption is overcome it must be shown by the evidence in the case, to the satisfaction of the jury, that at the time of such shooting with said deadly weapon the defendant was in immediate, real, or apparent danger of losing his life or suffering great bodily harm from Lidell, and such danger must have been urgent, present, and imminent at the moment of the killing."

This instruction is erroneous, and in effect shifts the burden of proof to the defendant to satisfy the jury by the evidence of his innocence when the killing with a deadly weapon has been proven. True, it states that the jury ought to be satisfied from the whole evidence of his innocence; but we see no difference between this instruction and those which directly state that this burden rests upon the defendant. It further omits the fact that the jury must acquit the defendant if they have a reasonable doubt, arising from the evidence or the lack of evidence, of his guilt. This same instruction was given to the state in the *Guice Case,* 60 Miss. 714, and was also given in the *Lamar Case,* 63 Miss. 265. The court, in discussing this instruction in the Lamar Case, in part says:

"By the second instruction which was given for the state, the district attorney invoked, in behalf of the state, the presumption of malice, which arises from the killing with a deadly weapon, and by it the jury were told that this presumption must control unless from the evidence it appeared, to their satisfaction, that there were circumstances of alleviation, excuse, or justification.

"The very common practice by prosecuting attorneys of emphasizing the presumption of malice which arises from the use of a deadly weapon, and of isolating and separating this presumption from all the other evidence in cases in which all the facts and surrounding circumstances are known and detailed by witnesses, should be discouraged by the trial judges by inserting in such instructions, when asked, the explanation that, though such presumption exists, yet when the facts and circumstances of the homicide are detailed by the witnesses, the jury should consider all the evidence, and from a consideration of the whole case determine whether the killing was or was not malicious. It is true that the law presumes malice from the deliberate use of a deadly weapon; it is not true that this presumption should control in determining the verdict in cases in which all presumptions are swallowed up by a full disclosure of all the facts surrounding and attending the killing. Instructions of this character are not erroneous, for the presumption does exist as stated, but it exists as a part of the whole case and not as a dominating factor controlling all the facts disclosed, as it is the tendency of such instructions to suggest. But the instruction in this case goes further, and informs the jury that this presumption of malice is to prevail unless, from the evidence, circumstances of alleviation, excuse, or justification are shown to the satisfaction of the jury. . . .

"It is sufficient if the evidence taken as a whole, whether introduced by the state or by the defendant, leaves the question of his guilt in reasonable doubt.

"The case of *Guice* v. *State,* 60 Miss. 714, in which .an instruction of similar character was held not to be erroneous, was one in which this court was able to say that no evidence was introduced either by the state or the defendant proving, or tending to prove, an overt act by the deceased."

The defendant was denied an instruction fairly stating the converse of the above, reading as follows:

"The court instructs the jury for the defendant that in this case the state must make out her case to a moral ·certainty, and it is not until she has done so ·that the accused is required to do anything,. and then he need only ·from. the whole body of the evidence adduced for him .and against him raise a reasonable doubt of his guilt to entitle him to acquittal; and it is not true that, if no excuse or justification of the killing is shown by the state's evidence, the defendant is guilty of murder, unless he has by his evidence proven the excuse or justification."

The above instruction is a correct announcement of the .law and should have been given.

There were errors also in permitting the introduction of certain testimony:

The witness McElroy should not have been allowed to ·express his opinion that it "looked like there had been a ·crap game there;" he should have stated the facts and let the jury draw the conclusion therefrom. The testimony of A. J. Yates showed that the place of killing ·was pointed out to him by some one, but by whom· he did not say. He did not know, of his own knowledge, where ·the killing occurred; and it was not shown that he was correctly informed as to this, consequently his entire testimony was hearsay and should have been excluded. The testimony of Dr. Watkins about the witness Jones making a statement to him about the facts of the killing was . evidently introduced in rebuttal of. the testimony of the witness Bryan. The latter had testified. of a statement ·made to him by Jones in the office of Dr. Watkins. Bryan stated, however, that Dr. Watkins was not present at

this conversation; and in this he was not contradicted by
Dr. Watkins.  Therefore the testimony of Dr. Watkins
was not in rebuttal and should have been excluded.  It
was further error to allow the witness Wilborn to testify
that ''he reckoned'' the witness Cox had a son implicated
in this killing, ''that is what they say.''  This is another
instance of hearsay testimony purely and simply.

<div align="right">

*Reversed and remanded.*