PAIRLEE (ALIAS PARLLEE) ROGERS *v.* STATE.

No. 39411          January 3, 1955          76 So. 2d 702

*Raymond Swartzfager,* Laurel, for appellant.

612

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

LEE, J.

Pairlee (Alias Parllee) Rogers was indicted in the Circuit Court of Jones County for the murder of Woodrow Crosby. The jury found her guilty of manslaughter and the court sentenced her to serve a term of twelve years in the state penitentiary. From the judgment rendered she appealed.

On September 5, 1953, Woodrow Crosby and his wife, Phoebe Lee, were operating a sandwich shop in the City

of Laurel. During the afternoon Sammy Evans and Jesse James Keys engaged in a fist fight in the shop. Woodrow undertook to separate them. He got his arms around Sammy's neck, and in tussling they moved outside of the shop. The versions of the State and the defendant, as to the subsequent events, were in sharp conflict.

According to the evidence of Phoebe Lee Crosby and her sister, Amy Day, two alleged eyewitnesses, Pairlee Rogers came directly across the street from the home of Bessie May Moffett, a cousin of her husband, with either a Texas jackknife or a switch blade. Phoebe Lee, thinking that the defendant was about to make an attack on her, grabbed her arm and said, "Sister, I haven't done anything to you" and shoved her backwards. The defendant then struck Woodrow over the eye. Thereupon he turned Sammy loose, picked up a brick and said, "If you come up on me with that knife, I will hit you with this brick." However she did go up on him and stabbed him; and he immediately exclaimed, "I am stabbed to the heart, take me to the doctor." Amy's version was that the defendant went up to Woodrow and said, "Don't hit him any more," and immediately struck Woodrow. Thereupon Woodrow reached down for a brick, saying, "If you cut me again I will hit you with this brick"; but, as he came up with it, he exclaimed, "Oh, I am stabbed to my heart," and fell to his knees. Both of these witnesses testified that they did not have bricks or weapons of any kind; that Woodrow had no weapon of any kind, did not strike the defendant with a brick, and made no effort to get the brick until after defendant had struck him.

Sammy Evans testified that the tussle arose from his shoving Keys on some Coca-Cola bottles; that he and Woodrow were not fighting; that they were life long friends; that Woodrow did not hit him with a brick and he had no knots on his head; that there was no reason for Pairlee to come to his rescue, as he was in no dan-

ger; and that he did not even know her, and had never seen her until the day of the trial.

According to the medical evidence, the stab was about three-quarters of an inch wide and in the right side of the chest. It penetrated the lungs and caused death about thirty minutes later.

The defendant, in testifying for herself, said that she was on her way home when she observed the fighting; that she asked Woodrow to turn Sammy loose and she would take him up the street; that Phoebe Lee, with a brick in her hand, intervened and asked what she had to do with it; that her sister, Amy, also had a brick; that Woodrow turned Sammy loose, ran at her, struck her with a brick, knocked her down, started on her again, and then it was that she stabbed him. She was given substantial corroboration in her version by three other witnesses, and in part, by another. On cross examination, she admitted that, prior to the trial, she stated that she and Woodrow were facing each other when he struck her with the brick, and she could not explain how, with the brick in his right hand, Woodrow struck her on her right arm. But, as a witness, she said that she fell, and in that way, caught the lick on her right arm.

██ Since the evidence presented a sharp dispute as to the circumstances of the stabbing, the issue was for the jury. Hence the requested peremptory for the defendant was properly refused. Neither was the verdict against the weight of the evidence.

██ According to the State's evidence, the appellant stabbed Crosby to death at a time when neither she nor Sammy Evans were in any danger, real or apparent, of losing their lives or suffering some great bodily harm at the hands of Crosby. If the killing occurred under those circumstances, it was either murder or manslaughter; murder, if done with malice aforethought, and manslaughter, if done without malice. Both guilt and the grade of the homicide were for the determination of the jury. Hence it was not error to submit the issue as to

murder. Denham v. State, 67 So. 2d 445. ▮▮ Besides since the appellant was convicted only of manslaughter, she can not complain at the giving of a murder instruction. Trask v. State, 216 Miss. 557, 62 So. 2d 888; Denham v. State, supra, and authorities there cited. Consequently the court properly refused the defendant's requested instruction which limited the grade of the homicide to manslaughter. Knight v. State, 215 Miss. 251, 60 So. 2d 638.

▮▮ Complaint is made of a certain State instruction directed to the existence of the elements necessary to justify a homicide on a plea of self-defense. Without quoting the instruction, it is sufficient to say that it was in substantial conformity with the instruction which was approved by this Court in Ransom v. State, 149 Miss. 262, 115 So. 208. See also Robinson v. State, 49 So. 2d 413; Pitts v. State, 211 Miss. 268, 51 So. 2d 448.

Appellant also complains of a State instruction which informed the jury in effect that malice may be inferred from the deliberate use of a deadly weapon in a difficulty, not in necessary self-defense.

▮▮ This Court has repeatedly held that where all of the facts and circumstances surrounding a homicide are fully disclosed by the evidence, it is error to instruct that the law presumes malice from the use of a deadly weapon. Cumberland v. State, 110 Miss. 521, 70 So. 695; Walker v. State, 146 Miss. 510, 112 So. 673; Smith v. State, 161 Miss. 430, 137 So. 96; Winchester v. State, 163 Miss. 462, 142 So. 454; Batiste v. State, 165 Miss. 161, 147 So. 318; Dickins v. State, 208 Miss. 69, 43 So. 2d 366. This conviction however was for manslaughter, not murder; and malice is not a requisite ingredient of manslaughter. Section 2226, Code of 1942; Moore v. State, 86 Miss. 160, 38 So. 504. Consequently the appellant suffered no harm from the instruction.

A State instruction informed the jury in effect that, if it found the defendant guilty of manslaughter, what the form of the verdict should be. Appellant contends

that this constituted error because it did not define manslaughter.

Now it is generally known that manslaughter is a lesser grade of felonious homicide than murder. Under the State's evidence, it was not incumbent on the prosecution to request a manslaughter instruction, although it would have been proper to do so. If the defendant had requested an instruction correctly defining manslaughter, of course the Court would have granted it. In the absence of such request, she is not in position to complain of the verdict.

The other assignments have been duly considered, but they possess so little merit that it is deemed unnecessary to make response to them.

No prejudicial error appears in the record, and the cause must therefore be affirmed.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.