606 So.2d 1092 (1992)
Earl MALLETT
v.
STATE of Mississippi.
No. 89-KA-0440.
Supreme Court of Mississippi.
August 19, 1992.
*1093 James Fougerousse, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appellant has been convicted of murder and appeals, presenting four issues, on any one of which we might reverse. We have reviewed his points with care and find that each presents well-worn law which, when applied to the proof in the record, may only mandate affirmance.

II.
At approximately 11:30 p.m. on December 12, 1987, Earl Mallett shot and killed 49-year-old Bob Powell Burnley with a .38 caliber pistol. Mallett fired the fatal shot just outside the front door of a west Jackson honky-tonk known as "The Big House Lounge." Mallett's missile struck Burnley in his left eye  an artificial or prosthetic glass eye  and tore a pathway through his brain, lodging finally in the back of his skull.
Jackson police officer Doug Winstead arrested Mallett at his home some four hours later. Mallett admitted the shooting and took the officer to the pistol which was located in a small plastic panel above the glove box in his Buick automobile. Officer Winstead described the location of the vehicle as follows:
In this particular vehicle in the glove compartment there's a little plastic panel there that had been altered to where it could be removed, and the weapon was inside behind the panel. It wasn't in the glove box itself; it was in the panel above the glove box.
From the outset, Mallett claimed the shooting was in self-defense and that he had not intended to kill Burnley.
On February 8, 1988, the grand jury of the First Judicial District of Hinds County, Mississippi, returned an indictment charging Mallett with the murder of Burnley. The matter proceeded to trial on December 13, 1988, and in due course, the jury found Mallett guilty as charged. The Circuit Court sentenced Mallett to life imprisonment. Mallett made timely motions for judgment of acquittal notwithstanding the *1094 verdict or, in the alternative, for a new trial, but the Circuit Court overruled these motions.
Mallett now appeals to this Court.

III.
Mallett says this is a Weathersby[1] case. He points to the fact that there were no eyewitnesses to the shooting, save himself, and says this obliged one and all to accept his self-defense story. Mallett argues that the Circuit Court erred when it refused to direct a verdict of acquittal. Alternatively, he says that the Court erred when it refused to instruct the jury in the language of the Weathersby rule.
If a defendant is the only eyewitness to a homicide, and his version of the facts is reasonable and consistent with innocence and is not contradicted by physical facts or other credible evidence, he is entitled to acquittal. Heidel v. State, 587 So.2d 835 (Miss. 1991); Jackson v. State, 551 So.2d 132 (Miss. 1989). This is so because, in such a case, it follows necessarily that no reasonable juror could find the defendant guilty beyond a reasonable doubt. Conversely, where the evidence shows circumstances materially contradicting the defendant's version of the facts, the matter of guilt is properly an issue for the jury. We have repeatedly emphasized
The Weathersby rule ... is not a jury instruction but a guide for the circuit judge in determining whether a defendant is entitled to a directed verdict.
Blanks v. State, 547 So.2d 29, 34 (Miss. 1989); Griffin v. State, 495 So.2d 1352, 1355 (Miss. 1986); Harveston v. State, 493 So.2d 365 (Miss. 1986).
Mallett testified that the shooting was precipitated by a verbal altercation between Burnley and himself inside The Big House. He related that Burnley asked if he were a Mallett, and after his denial, would not let the matter drop and threatened to kill him. He states that he departed the lounge, followed by Burnley, who again threatened to kill him. Mallett says he turned to confront Burnley, but noticed Burnley reach inside his coat for a weapon. Mallett says he then shot Burnley, intending to hit him only in the shoulder.
The testimony of other witnesses, however, suggests a different scenario. While several confirm a verbal dispute between Mallett and Burnley, there is evidence that, after Mallett left, Burnley remained inside for four or five minutes, that he made friendly goodbyes to his acquaintances, and exited the front door, and that those inside heard a shot only a second or two later. There was substantial evidence from which the jury could have believed that Mallett left the premises and was lying in wait for Burnley and fired a moment after Burnley emerged. The Circuit Court committed no error when it denied Mallett's motion for a directed verdict. Wetz v. State, 503 So.2d 803 (Miss. 1987); Harveston v. State, 493 So.2d 365 (Miss. 1986).

IV.
Mallett charges error in the Circuit Court's granting of Instruction S-1.[2] Mallett's specific complaint about S-1 is that it allowed the jury "a multiple choice" in considering the charge of murder; that is, it tells the jury it can find Mallett guilty of murder if he killed Burnley

*1095 with the premeditated and deliberate design to effect the death of Bob Powell Burnley with malice aforethought, ...
or, if he killed Burnley
in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Bob Powell Burnley, and not in necessary self-defense.
These two versions of murder are taken straight from the statute, Miss. Code Ann. § 97-3-19 (Supp. 1987), which provides:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
(a) When done with deliberate design to effect the death of the person killed, or of any human being;
(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.
There is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a). See Windham v. State, 602 So.2d 798 (Miss. 1992); Fairman v. State, 513 So.2d 910, 913 (Miss. 1987); Johnson v. State, 475 So.2d 1136, 1139-40 (Miss. 1985); Talbert v. State, 172 Miss. 243, 250, 159 So. 549, 551 (1935). There is no error here.

V.
Mallett next claims the Circuit Court erred in failing to submit to the jury an instruction on the lesser included offense of manslaughter. When he raises the point, he immediately encounters a procedural barrier, for nothing in the record suggests that Mallett asked for a manslaughter instruction. We have held time and time again that a party may not complain on appeal of the failure to grant an instruction which was not at least in substance requested in the trial court. See, e.g., Wetz v. State, 503 So.2d 803, 809 (Miss. 1987); Ivory v. State, 336 So.2d 732, 734 (Miss. 1976); Newell v. State, 308 So.2d 71, 78 (Miss. 1975); McMullen v. State, 291 So.2d 537 (Miss. 1974).
Besides, we perceive no evidentiary predicate for a manslaughter instruction. The prosecution's proof pointed solely to murder as the correct legal interpretation of Mallett's actions, while Mallett claimed self-defense. We find that the jury was liberally instructed on self-defense or justifiable homicide. See Instructions Nos. S-2 and D-8. We perceive no error requiring reversal here. See Graham v. State, 582 So.2d 1014, 1017-18 (Miss. 1991); Stevens v. State, 458 So.2d 726 (Miss. 1984).

VI.
Mallett says the Circuit Court erred when it sustained the prosecution's objection when he called Edwina Ard, a forensic chemist, as a witness for the defense. Mallett proffered that Ms. Ard would testify regarding the blood alcohol content of the deceased and would suggest that the deceased was substantially intoxicated immediately prior to his death.
There is no question but that Burnley had been drinking prior to his fatal encounter with Mallett. But it is not clear the relevance of such fact to any issue before the Court. Burnley may have been a boozer of the worst kind, but that does not mitigate the severity of Mallett's felonious conduct.
The homicide laws of this state protect all living beings within the jurisdiction, *1096 sinners as well as saints, drunks as well as deacons.
Dickerson v. State, 441 So.2d 536, 538 (Miss. 1983).
Assuming arguendo this testimony might have some tangential relevancy, see Rule 401, Miss.R.Ev., the Circuit Court was correct on discovery grounds. Prior to trial, Mallett had invoked discovery under Rule 4.06, Miss.Unif.Crim.R.Cir.Ct.Prac. (1979 as amended). By doing this, Mallett subjected himself to a reciprocal duty. The rule provides:
If the defendant requests discovery under this rule, the defendant shall, subject to constitutional limitations, promptly disclose to the prosecution... names and addresses of all witnesses in chief proposed to be offered by the defendant at trial....
Without dispute, Mallett did not disclose the name of Ard as a witness prior to trial. He was thereby precluded from calling her as a witness.
CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion, joined by HAWKINS, P.J., and BANKS, J.
DAN M. LEE, Presiding Justice, dissenting:
Prior to Windham v. State, 602 So.2d 798 (Miss. 1992) and today's majority holding, it has always been beyond dispute that malice aforethought, also known as deliberate design, is what separates murder from manslaughter. We have said so, over and over again, in the following and in many other ways:
The chief distinction between murder and manslaughter is the presence of deliberation and malice in murder and its absence in manslaughter.
Goldsby v. State, 226 Miss. 1, 15-16, 78 So.2d 762 (1955); Carter v. State, 199 Miss. 871, 25 So.2d 470 (1946).
This conviction ... was for manslaughter, not murder; and malice is not a requisite ingredient of manslaughter. Section 2226, Code of 1942; Moore v. State, 86 Miss. 160, 38 So. 504 [1905].
Rogers v. State, 222 Miss. 609, 616, 76 So.2d 702 (1955).
The distinction between murder and manslaughter is that the homicide in the case of murder must have been committed with malice and after deliberation.
Hammock v. State, 379 So.2d 323, 328 (Miss. 1980).
The State obtained, and the jury received, the following self-contradictory and therefore confusing instruction:
The Court instructs the jury that murder is the killing of a human being with malice aforethought, not in necessary self-defense, and without the authority of law, by any means or any manner, when done with the premeditated and deliberate design to effect the death of the person killed. The Court further instructs you that if you believe from the evidence in this case, beyond a reasonable doubt, that Earl Mallett on or about December 12, 1987 killed Bob Powell Burnley, a human being, without authority of law, either: (a) with the premeditated and deliberate design to effect the death of Bob Powell Burnley with malice aforethought; or (b) done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Bob Powell Burnley, and not in necessary self-defense, then Earl Mallett is guilty of murder, and it is your sworn duty to so find.
The problem is that part (a) of the instruction defines murder as the killing of a human being "with the premeditated and deliberate design to effect the death of Bob Powell Burnley," and the instruction then contradicts itself in part (b) by saying murder includes a killing "done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any *1097 premeditated design to effect the death of Bob Powell Burnley, and not in necessary self-defense." The first part of the instruction states that murder requires a deliberate design to kill another, and then part (b) takes away this requirement. It is a self-contradictory and therefore confusing instruction and should not have been given in this case, in that it gives two definitions as to what the law is for the jury to apply to the facts to determine whether the crime is murder or manslaughter.
It is reversible error to give instructions likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence. Moak v. Black, 230 Miss. 337, 351, 92 So.2d 845 (1957); Film Transport Co. v. Crapps, 214 Miss. 126, 135, 58 So.2d 364 (1952) ("the decisions of this Court condemning the giving of contradictory and conflicting instructions are too numerous to require citation"); Jackson v. Leggett, 186 Miss. 123, 131-32, 189 So. 180 (1939) (citing cases); Solomon v. City Compress Co., 69 Miss. 319, 327, 12 So. 339 (1891); and Herndon v. Henderson, 41 Miss. 584, 601-02 (1868).
This court has struggled to define depraved heart murder without malice, as distinguished from manslaughter. It is unreasonable to expect a jury of laypeople to draw a distinction between murder and manslaughter when this court cannot.
Justice Banks hit the nail on the head earlier this year in a dissenting opinion in which he wrote:
The majority reading of "depraved heart" murder subsumes both deliberate design murder and most, if not all, of our various manslaughter statutes. That's the problem. While it may be difficult to explain why this would be a loss to society, the power of the legislature to define crimes includes the power to make distinctions. Our duty to construe statutes to give effect to all of their provisions compels us to recognize such distinctions. Pinkton v. State, 481 So.2d 306, 310 (Miss. 1985); Mississippi Public Service Commission v. City of Jackson, 328 So.2d 656, 658 (Miss. 1976); State v. Russell, 185 Miss. 13, 21, 187 So. 540, 542 (1939) (Declining to construe a section of a conspiracy statute so as to subsume other more specific provisions).
Windham v. State, 602 So.2d at 808-09 (Miss. 1992) (Banks, J., dissenting, joined by Dan M. Lee, P.J.).
It is noted that Justice Hawkins likewise wrote a separate concurring opinion in Windham, where he stated:
If the slaying in this case was indeed a subparagraph (b) murder, then there is no way any court can ever direct a verdict to a jury that the defendant is at most guilty of manslaughter. Every instance of a slaying in the heat of passion is perforce committing an act dangerous to another. Whether the defendant is convicted of murder or manslaughter will depend upon the whim or circumstance of the jury hearing the case, not upon understandable instructions delineating what constitutes each crime.
* * * * * *
That the Legislature, if it chose to do so, could very well make the crime of slaying in the heat of passion a murder, I have no doubt. U.S. v. Browner, 889 F.2d 549 (5th Cir.1989). I am equally certain that the Legislature has not done so. We have.
If we read the statute as the Legislature manifestly meant it to be read, we would encounter no difficulty. This statute says quite simply that a person who (1) engages in some act extremely dangerous to others and (2) who does so with an evil state of mind  e.g., placing a bomb in a building  this meets the requirement. If we would leave it at that, we would have no problem. We had none in the first 150 years we had the statute. It is when a court seeks to expand the statute to mean something else that we run into trouble.
When the distinction between criminal statutes, which over the years have accumulated well-defined meanings, is blurred, we create problems for the prosecution and defense, and ourselves as well.
*1098 Windham v. State, 602 So.2d at 805-06 (Miss. 1992) (Hawkins, P.J., concurring) (footnote omitted).
Feeling that today's majority subsumes many of our manslaughter statutes and blurs the distinction between murder and manslaughter, which will ultimately create many problems for the prosecution, defense, and this court in the future, I dissent.
HAWKINS, P.J., and BANKS, J., join this opinion.
NOTES
[1] See Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).
[2] Instruction S-1 in its entirety reads as follows:

The Court instructs the jury that murder is the killing of a human being with malice aforethought, not in necessary self-defense, and without the authority of law, by any means or by any manner, when done with the premeditated and deliberate design to effect the death of the person killed. The Court further instructs you that if you believe from the evidence in this case, beyond a reasonable doubt, that Earl Mallett on or about December 12, 1987 killed Bob Powell Burnley, a human being, without authority of law, either: (a) with the premeditated and deliberate design to effect the death of Bob Powell Burnley with malice aforethought; or (b) done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of Bob Powell Burnley, and not in necessary self-defense, then Earl Mallett is guilty of murder, and it is your sworn duty to so find.