RUSSELL, J.,
for the Court:
¶ 1. Mark Anthony Armón appeals from the Hinds County Circuit Court’s judgment of conviction for the murder of Christopher Adagbonyn. The circuit court sentenced Armón to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Finding Armon’s assignments of error without merit, we affirm the judgment of the circuit court.
FACTS
¶ 2. On September 14, 2007, Armón, Dominique Mobley, and Patrick Holiday were *763 at Holiday’s house. Mobley explained to Armón and Holiday that Adagbonyn had “shorted” him in a previous drug deal. Mobley was angry about the transaction and wanted to confront Adagbonyn. Therefore, Mobley called Adagbonyn and arranged to meet him later that day. Ar-món agreed to go with Mobley to the meeting.
¶ 3. According to Holiday, when Armón and Mobley left his house to meet Adagbo-nyn, both had firearms. Holiday testified that Mobley had either a .40- or .45-caliber firearm, and Armón had a .223-caliber firearm, which he had borrowed from Holiday. Holiday referred to his .223-caliber firearm as a “baby rifle.”
¶ 4. According to Armón, Mobley and Adagbonyn began arguing when they arrived at the meeting place. Eventually, Mobley fired his weapon at Adagbonyn. Armón testified that he accidently fired his weapon because he was startled by the gun fire. Mobley and Armón fled the scene. Adagbonyn died from a gunshot wound to his head.
¶ 5. After Armón learned that he was wanted for questioning, he soon met with officers from the Jackson Police Department (JPD). More details on his interaction with JPD officers are set forth below.
¶ 6. Armón was later indicted under Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006) for deliberate-design murder. A jury found Armón guilty of murder, and the circuit court sentenced him to life imprisonment in the custody of the MDOC. The circuit court denied Ar-mon’s alternative motions for a judgment notwithstanding the verdict (JNOV) or for a new trial. Armón appealed.
¶ 7. On appeal, Armón asserts several assignments of error, which we have consolidated and rephrased for our review. Armón asserts: (1) the trial court erred by denying his motion to suppress; (2) the evidence is insufficient to support a conviction of either deliberate-design murder or depraved-heart murder; and (3) he is entitled to a new trial.
DISCUSSION
I. Motion to Suppress
¶ 8. The evidence from Armon’s motion-to-suppress hearing indicates that Armón went to JPD three days after Adagbonyn’s death. At 6:07 p.m., shortly after his arrival, Armón signed a Miranda[1] waiver. Detective Amos Clinton then questioned Armón, but Armón denied any involvement with Adagbonyn’s death. Detective Clinton concluded the interrogation at 7:23 p.m. Armón testified that after Detective Clinton completed his first interrogation, Detective Clinton told him he was lying about not being involved with Adagbonyn’s murder. According to Armón, he then asserted his right to remain silent and requested an attorney.
¶ 9. Detective Clinton, however, testified that after Armon’s first interrogation was over, he allowed Armón to read and to approve his responses from the first interrogation. Detective Clinton explained that during this time, he compared Armon’s statement with Holiday’s statement and information from the crime scene. Both Detective Clinton and Detective Christopher Watkins testified that Armón did not request an attorney and that he voluntarily agreed to give a second interview after he was urged to tell the truth.
¶ 10. At 8:26 p.m., Detective Clinton began interrogating Armón a second time. During this interrogation, Armón recanted his earlier statement. He admitted to going with Mobley to meet with Adagbonyn. *764 He stated that after Mobley fired his weapon at Adagbonyn, he became startled and accidently discharged the .223-caliber firearm that he had taken with him. The second interrogation concluded at 8:43 p.m.
¶ 11. Finding that Armón did not have to be re-advised of his rights and that he did not request an attorney, the circuit court denied Armon’s motion to suppress his statements.
¶ 12. Citing Ruffin, the circuit court determined a short period of time had elapsed between Armon’s interviews; therefore, Armon’s second interview was covered by the Miranda rights given before his first interview. See Ruffin v. State, 992 So.2d 1165, 1171 (¶ 17) (Miss. 2008) (upholding denial of motion to suppress where defendant was Mirandized in the first interrogation, but was not fully Mirandized before a second interrogation approximately eight minutes later); Johnson v. State, 475 So.2d 1136, 1144-45 (Miss.1985) (upholding denial of motion to suppress where defendant was Mirandized in the first interrogation, but was not fully Mirandized in a second interrogation one hour later).
¶ 13. The circuit court also rejected Armon’s contention that he invoked his right to counsel after the first interview. The circuit court noted Detective Clinton’s and Detective Watkins’s testimonies both stating that Armón did not request an attorney. Thus, the circuit court determined it was more reasonable to believe that Armón did not request an attorney after signing his Miranda rights.
¶ 14. On appeal, Armón argues the statement given during the second interrogation was not voluntarily given and that it was given in violation of his right to counsel. We address each argument below.

A. Voluntariness

¶ 15. “Before a challenged confession is admissible, the trial court must determine that it was voluntary beyond a reasonable doubt.” Harden v. State, 59 So.3d 594, 605 (¶ 25) (Miss.2011). A voluntary confession “must have been freely given and must not be the product of coercion by threats, promises, or inducements.” Id. The State holds the burden of proving that Armon’s confession was voluntary. Id. (citation omitted). A prima facie case of “[v]oluntariness may be established through testimony from officers or those who may have specific knowledge of the facts that the confession was made without any threats, offers of reward, or coercion.” Id. (citation omitted). “Then, the defendant may rebut the testimony with contrary evidence; whereupon the State must offer the testimony of all officers who witnessed the confession, or give an adequate reason for their absence.” Id. (citation omitted).
¶ 16. In this case, the State’s burden was met with testimony from Detective Clinton and Detective Watkins, the JPD officers who were present during Armon’s interrogations. Detective Clinton advised Armón of his Miranda rights before the first interrogation and reminded him of his rights during the second interrogation. Detective Watkins witnessed both interrogations. Both testified that Armón was not coerced into giving a confession. Therefore, Armon’s contention that his confession was not voluntary lacks merit.

B. Right to Counsel

¶ 17. “[Ojnce an accused has requested counsel during the interrogation process, interrogation must cease, and the accused may not be questioned further without an attorney being present, unless the accused voluntarily initiates communication.” Id. at 607 (¶ 35) (citing Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. *765 1880, 68 L.Ed.2d 378 (1981)). “The right to an attorney must be specifically invoked.” Id. (citation omitted). “[A] defendant’s request for counsel must be clear and unambiguous in order for an officer to stop questioning the suspect.” Id. (citation omitted).
¶ 18. Armón asserts that he requested an attorney after his first statement to Detective Clinton. But Detective Clinton and Detective Watkins both testified that Armón did not request an attorney after he gave the first statement. Detective Clinton testified that Armón agreed to further questioning after he was encouraged to tell the truth. Moreover, the transcript from Armon’s second interview indicates that he acknowledged that Detective Clinton had Mimndized him prior to his first interview and that he understood his rights. Therefore, Armon’s contention that his statement was taken in violation of his right to counsel lacks merit.
II. Sufficiency of the Evidence
¶ 19. Armón argues his motion for a directed verdict should have been granted because the State failed to prove the elements of deliberate-design murder. He argues the State presented no evidence that he intentionally fired at the victim.
¶ 20. Although not so worded, Armón also argues the circuit court should have granted his motion for a judgment not withstanding the verdict. He challenges the sufficiency of the evidence to support depraved-heart murder on the basis that the State presented no evidence of a willful act that was likely to result in the victim’s death.
¶ 21. A motion for a directed verdict and a motion for a JNOV challenge the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). When reviewing the denial of these motions, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (citation omitted).
¶22. Mississippi Code Annotated section 97-3-19(l)(a) defines deliberate-design murder as:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder ...
(a) When done with deliberate design to effect the death of the person killed, or of any human being[.]
Mississippi Code Annotated section 97-3-19(l)(b) defines depraved-heart murder as:
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder ...
(b) When done in the commission of an act [imminently] dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual[.]
¶23. Rational jurors could have concluded that Armón was guilty of deliberate-design murder or depraved-heart murder. Before Armón went with Mobley to meet Adagbonyn, Armón knew: Mobley was angry with Adagbonyn; Mobley intended to “straighten” Adagbonyn; and this “straightening” would involve Mob-ley’s .45-caliber firearm. Despite knowing these facts, Armón agreed to go with Mob-ley and carried a loaded .223-caliber firearm with him. Further, Holiday testified that the .223-caliber firearm he loaned to Armón had to be “cocked” or chambered before the weapon would fire; this testimony disputes Armon’s contention that he accidentally fired the firearm. Finally, the projectile recovered from Adagbonyn came from a rifle. Thus, it was perfectly ration *766 al for the jury to conclude that Armon’s actions were imminently dangerous to others evincing a depraved heart and that his actions were done with the deliberate design to cause Adagbonyn’s death. Therefore, this issue lacks merit.
III. New Trial
¶ 24. Armón asserts he is entitled to a new trial because (1) the verdict is against the weight of the evidence; (2) the circuit court granted the State’s requested jury instruction on deliberate-design murder and depraved-heart murder; and (3) the prosecutor made improper comments during rebuttal-closing argument. We address each assignment of ei’ror below.

A. Weight of the Evidence

¶ 25. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, [this Court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). This Court must consider the evidence in the light most favorable to the verdict. Id. “The motion ... is addressed to the discretion of the court.... [A] new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (citation omitted). When faced with conflicting testimony, “[t]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses.” Mohr v. State, 584 So.2d 426, 431 (Miss.1991).
¶ 26. It is true that in his statement to the police, Armón stated he had accidentally discharged his weapon after hearing the shot fired by Mobley. However, Holiday’s description of how the .223-caliber firearm operated challenged Armon’s accident theory. The jury was free to reject Armon’s account. Viewed in the light most favorable to the verdict, we cannot say that the evidence preponderates heavily against the jury’s decision to find Armón guilty of murder. Therefore, this issue is without merit.

B. Two-theory Jury Instimction

¶ 27. Armón asserts the circuit court erred by granting the State’s jury instruction setting out two theories of murder. Armón acknowledges that in Mallett, the Mississippi Supreme Court held that deliberate-design murder and depraved-heart murder were essentially the same. Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992). Specifically, the supreme court stated:
There is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(l)(b) subsumes (l)(a).
Id. But Armón asserts that the logic behind the two types of murder being the same does not apply to his case because the State presented no evidence of his deliberate design to murder. Armón, therefore, contends that he was convicted of a crime different from that which was included in his indictment, in violation of his constitutional rights.
¶ 28. Armon’s argument is misplaced. As set forth in our discussion above, there was evidence from which the jury could *767 conclude Armón was guilty of either deliberate-design murder or depraved-heart murder. Therefore, this issue lacks merit.

C. Closing Arguments

¶ 29. During the State’s rebuttal-closing argument, the prosecutor stated the following:
Do you remember I asked Patrick Holiday was this something you could easily conceal? No, because the thing is about a foot and a half long. Not like a handgun, ... that you could stick in your pants or stick in your pocket or hold under your arm. This thing is a machine pistol that [Armon’s] walking two blocks down, apparently in broad daylight, having made it fire ready. Again, actions that speak a lot louder than [Ar-mon’s] hollow words that it’s an accident, and [he] didn’t mean to. He approached this man who was sitting in his car....
¶ 30. Armón objected to the prosecution’s use of the word “approached.” But the circuit court overruled the objection. On appeal, Armón asserts he is entitled to a new trial because the prosecutor’s statement — that Armón approached Adagbo-nyn — improperly alleged facts that were not in evidence. He asserts this statement was “highly prejudicial” because it was the only suggestion of willful action by him.
¶ 31. The standard of review for alleged attorney misconduct during closing statements “is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Tate v. State, 20 So.3d 623, 629 (¶ 14) (Miss.2009) (citation omitted). Although “[attorneys are allowed a wide latitude in arguing their cases to the jury .... prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.” Id. (citation omitted). During closing arguments, an attorney may address “the facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts.” Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991).
¶ 32. The prosecutor in this case stayed within these well-established boundaries. The statement that Armón “approached” Adagbonyn’s vehicle was a reasonable inference based on the evidence that Armón and Mobley left Holiday’s house and went to meet Adagbonyn. Therefore, this issue lacks merit.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. MYERS, J., NOT PARTICIPATING.

. See Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).